[Civ. No. 18970. Second Dist., Div. One. Aug. 27, 1952.]

JOHN M. KNOLL et al., Appellants, v. CHARLES SCHLEUSSNER et al., Respondents.

Richard A. Haley for Appellants.

Miller, Vandegrift & Middleton for Respondents.

DRAPEAU, J.—By the instant action in usury, plaintiffs sought treble damages and injunctive relief. Their complaint alleges that on March 10, 1950, defendants agreed to lend them $4,000, and as security therefor required them to execute a note and trust deed covering real property

owned by them. In addition, defendants "demanded as a bonus for said loan" that plaintiffs agree to build a child's playground and tennis court on defendants' property, and to provide a caterpillar tractor and the necessary labor and materials to complete them.

Plaintiffs received $3,500 from defendants and in April of 1950, completed the playground and tennis court, as agreed upon, at a cost to them of $956.50. During this period defendants gave plaintiffs $200 to pay certain labor charges on the construction work and demanded a note from plaintiffs to cover it.

It is further alleged that defendants actually advanced to plaintiffs $3,700 and no more, for which they received interest of $956.50, which is in excess of 12 per cent per annum and therefore violative of the Usury Law of California.

The answer denied the usury and alleged that when the loan was made, plaintiffs were then indebted to defendants in the sum of $700.

The trial court found:

"I. That within one month prior to March 10, 1950, in pursuance of an oral agreement entered into between plaintiffs and defendants there was an account stated between plaintiffs and defendants wherein and whereby there was found to be due and owing to defendants by plaintiffs the sum of $700.00 which plaintiffs then and there orally agreed to pay to defendants.

"II. That on or about March 10, 1950, plaintiffs and defendants orally agreed that plaintiffs would perform work and supply materials and equipment for the leveling off, the building of a wall and other miscellaneous work on property owned by defendants to the extent of $200.00 worth. That said verbal agreement further provided that plaintiffs were not to be paid any money for said work on said property but that the said work was to be done by plaintiffs for the purpose of repaying to defendats a portion of a $700.00 debt then owed by plaintiffs to defendants.

"III. That any work performed or materials furnished for any work done on defendants' property by plaintiffs in pursuance of said agreement was not so performed or furnished as a bonus for the use of money lent, and said work, if any, did not constitute interest and was not usurious."

The court further found that "on or about April, 1950, defendants paid to plaintiffs the sum of $200.00 for the purpose of having the plaintiffs pay for certain work and ma-

terials furnished for work on property owned by defendants. That said sum of $200.00 was used by plaintiffs for the said purpose. That plaintiffs are not and never were obligated to repay said sum of $200.00 to defendants."

From the judgment which followed in favor of defendants, plaintiffs appeal.

Appellants concede the correctness of Finding No. I, but assert that Findings Nos. II and III are not supported by the evidence.

Appellants presented evidence to the effect that they needed $3,500 with which to purchase a caterpillar tractor. After some discussion, respondents agreed to lend them this amount. Respondent Charles Schleussner told Mr. Knoll "If I go into this with you, I want you to come up here and do my work first"; i.e., level off a small area on his back yard and build a brick retaining wall about 60 feet in length. Mr. Knoll estimated this would cost about $180.00. Just before they opened the escrow on the loan, said respondent told Mr. Knoll, "I am going to give you $3500.00, and I want you to sign a note for $4000.00, because I just want to get the work done. I want something to hurry you up; hold it over your head. . . . You can trust me. We have trusted each other before. . . . You don't have to worry about it." According to Mrs. Knoll's testimony, Mr. Schleussner said: "Ted, I am going to ask you to sign a note for $500.00 more than the amount you are going to receive. In other words, you are going to get $3500.00 but you are going to sign for four. I am going to hold that over your head, in the event you don't do the work, as you promised first in a hurry in my yard, and you don't go off on a tangent and work over on your property, or do another job, and let me sit there waiting for that job, and it will never be done."

In answer to the question: "You were obligated only to do $180.00 worth of work?" appellant Knoll stated, "I wasn't obligated to do $180.00 worth of work. . . . I was obligated to do a job that Mr. Schleussner planned, that included my time and my tractor, plus $180.00 to be expended by me in other items, and other payroll. I wasn't to be paid for my own time or my own equipment.

"Q. That is right. You had an agreement with Schleussner that he would pay anything over and above $180.00, didn't you? A. No.

"Q. Well, who was to pay that? A. Well, we didn't have that agreement to begin with. That came up after we were there a few days.

"Q. That is what I say, that was long after, a month or so after the loan was granted, wasn't it? A. Well, it was sometime afterwards. The job kept getting——

"Q. You had your $3500.00 already? A. Yes. . . .

"Q. And you were to go on there and do $180.00 worth of work? . . . A. No; don't call it $180.00. I was to do a certain job that included my equipment, my time and approximately $180.00 out of my pocket.

"Q. And that is all you considered yourself obligated to do—— A. That is right."

Respondent Charles Schleussner testified that through the years he and Mr. Knoll had had many business dealings. When they were discussing the loan of $3,500, it was agreed that Mr. Knoll was indebted to respondents on account of such past dealings in the sum of $700. In answer to the question, "Will you tell me why it was that you requested and required then only a $4000.00 note?" Mr. Schleussner said, "Because it was originally going to be a $4200.00 note. I told you the day Mr. Knoll left we reached this figure. He was going to talk it over with his wife. He came back the following day or several days later, and he said, 'As long as I am going to use this money to buy the tractor, it will help me to work out the $200.00, and just put $500.00 of it in escrow, in addition to the rest which I already owe you, which I will owe you now. So therefore, we will draw up the trust deed on the property for $4000.00 for six months. I only need the money for 30 or 60 days, and it will be fine for both of us.' Therefore, when I went into escrow I saw the $4000.00 note and trust deed, and as far as I was concerned, that was protection; that is what I wanted." This witness was then asked how Mr. Knoll was going to work out the remaining $200 of the original $700. To this he replied: "Work it out on the back of my property. . . . He was going to use his bulldozer or his tractor, and he was going to build a retaining wall. . . . We estimated the work was going to run around $200.00 roughly, what I wanted done, and that was to coincide with his figure. We really very particularly went over this, and we thought the work would cost $200.00. At that time he was going to drive the tractor himself. . . . He was going to do it for me at a reasonable figure but it got to be more than that;

if we enlarged the job, then I would pay him more which was natural, unless we were only going to work a day or two. . . . *after we made the loan,* and we started to work, *we started to change the whole deal, to build it large enough so we could put a tennis court in.* . . . we changed the plans several times after he once got started, and I told him he wasn't to do any more than he agreed to do, and *I would pay all the bills beyond that.* . . . Q. Did you have an agreement with reference to whether he spent more than $200.00? A. Yes, I did. *He was to present me with the bills and I would credit it to him at the time of the settlement of the trust deed, at the end of six months.* . . . In the meantime I gave him $200.00 more." (Emphasis added.)

This witness further testified that Mr. Knoll never told him that he had a $320 bill against him for the use of his tractor; neither did he mention any other bills for labor or material. That when he first saw the figure of $956, it "knocked" him over. "I didn't understand how he could have run up the amount of $956.00, how it was humanly possible."

An examination of the voluminous record, from which the foregoing resume has been extracted, reveals amply sufficient evidence to support the findings complained of.

 As stated in 11 California Jurisprudence, Ten Year Supplement (1950 Rev.) 163, sections 13, 14 (Usury): "The nature of the transaction—as being usurious or otherwise—being disputed, the question as to whether the contract is within the purview of the Usury Law is to be determined by the court by reference to its substance, regardless of its form. The entire transaction, of which the written contract is part, is to be considered in determining the issue as to usuriousness. . . .

"The presumption that the litigant has not violated the law will be indulged in favor of the legality of the disputed transaction. If the showing as to usuriousness leaves the triers of fact in doubt as to whether the contract is within the purview of the Usury Law, the doubt is to be resolved in favor of sustaining the transaction.

"As between two constructions, one of which involves usury, and the other of which shows the transaction to be nonusurious, the court will accept the latter interpretation. (Citing authorities.)"

 A contract is not usurious where it "does not in its inception require payments which are usurious even though

sums are subsequently paid by the obligor to the obligee as bonuses, which coupled with interest paid amount to a sum in excess of the legal rate of interest." (*Goldenzwig* v. *Shaddock*, 31 Cal.App.2d 719, 722 [88 P.2d 933].)

Moreover, as stated in *Goldenzwig* v. *Shaddock*, *supra*, "The burden is upon one, who charges the exaction of usurious interest to prove such charge by a preponderance of evidence. (*Ewalt* v. *Mortgage Securities, Inc.*, 129 Cal. App. 559, 564 [19 P.2d 60].) . . .

"(2) A contract which in its inception is unaffected by usury can never be invalidated by any subsequent usurious transaction. (*Sharp* v. *Mortgage Security Corp.*, 215 Cal. 287, 290 [9 P.2d 819]; *O. A. Graybeal Co.* v. *Cook*, 111 Cal. App. 518, 528 [295 P. 1088].)"

The evidence presented by respondents supports the finding that the transaction was free from usury at the time it was entered into.

And if, as the improvement plan developed, appellants did more work than originally contemplated, it was not done in consideration of the loan made to them by respondents.

For the reasons stated, the judgment is affirmed.

White, P. J., and Doran, J., concurred.

A petition for a rehearing was denied September 24, 1952.