Dan E. LYDICK, Jr., Appellant,

v.

M. S. STAMPS et al., Appellees.

No. 15929.

Court of Civil Appeals of Texas.

Fort Worth.

June 27, 1958.

Rehearing Denied Sept. 26, 1958.

**108**

---

Charles C. Peters, Jr., and Ernest May, Fort Worth, for appellant.

Richard Owens, Fort Worth, for appellees.

BOYD, Justice.

Appellant Dan E. Lydick, Jr., sued appellees M. S. Stamps and Lester Mathis for $6,600, which he alleged was double the amount of usurious interest in a note for $18,000, which was executed by Wilma Jean Cloke, payable to the order of appellant, endorsed by appellant with recourse and delivered to appellees, for which they gave appellant their respective checks in the amount of $7,500 each. Appellant paid to appellees $18,300, and appellees delivered the note to appellant marked, "Paid in full." Appellees denied that they made a loan to Mrs. Cloke, and alleged that they purchased the note from appellant for the agreed consideration of $15,000; they also filed a cross-action against appellant for the balance of three other notes held by them which appellant had endorsed with recourse. Appellant alleged that there was usury in all the notes. Upon a jury trial, appellant moved for an instructed verdict against himself for not more than $8,734.83, which he claimed was the balance of the principal of the notes with ten per cent additional as attorney's fees, less $6,600 as the statutory penalty for usurious interest collected. The motion was overruled. The jury found that the notes were not for loans made by appellees, but were notes purchased by them from appellant. Appellant moved for judgment non obstante veredicto against himself for not more than $8,734.83, which motion was overruled; and judgment was rendered for Stamps for $15,796.34 and for Mathis for $6,475.20.

Appellant's points of error principally relate to the action of the court in overruling his motion for instructed verdict and his motion for judgment non obstante veredicto.

Wilma Jean Cloke, her husband Arthur L. Cloke, and Cherilyn's, Inc., which was controlled by the Clokes, needed money. Mrs. Cloke tried to get a loan of $15,000 from Mathis, which he refused to make. She asked Mathis to confer with appellant. Mathis and Stamps went to appellant's office. Mrs. Cloke was there. As to the execution of the $18,000 note, Mathis testified: "Mr. Lydick said—introduced himself, and said, 'Are you gentlemen going to make this lady a loan?' We said, 'No. We will not make her any loan direct.' He said, 'Well —' we exchanged a few pleasantries, and then he asked us if we would buy a discounted note. We said, 'Mr. Lydick, if you

will endorse the note with recourse on you, then we will purchase it.' Mr. Lydick called in his secretary, made out the note. Mrs. Wilma Jean Cloke signed the note, gave it to Mr. Lydick. Mr. Stamps and I walked in the outer office, made out a check for $7,500.00 apiece. We came back in Mr. Lydick's office, handed him the checks. He handed us the note. We left with the note." Stamps testified:

"Q. Mr. Botts told you that—let me see exactly what you said: 'Botts told me that they were looking for some money and they would give a liberal discount.' Now, who was looking for some money? A. Dan Lydick and Mrs. Cloke.

"Q. And they would give a liberal discount on what? A. Notes. That's what he said he had.

"Q. Well, what you meant was that they would pay a liberal bonus for some money, wasn't it? A. Why, certainly."

The note was dated October 24, 1955, due 96 days after date, with interest at four per cent. The proceeds of the two $7,500 checks were delivered to Mrs. Cloke by appellant. This is all she received for the note.

The three notes sued upon in appellees' cross-action were made, endorsed by appellant, and delivered by him to appellees under similar circumstances.

On March 15, 1956, a note was signed "Arthur L. Cloke (by agent Wilma Newsom Cloke) Jean Cloke," in the principal sum of $6,150, payable to the order of appellant in monthly installments of $1,000 with interest from maturity at eight per cent per annum, and was endorsed by appellant and delivered to Stamps, for which Stamps issued his check to appellant in the sum of $5,150, which amount was passed to the credit of the makers of the note, and was all they received for it. Appellant paid four $1,000 installments as follows: on May 15, June 15, July 15, and August 15, 1956. He also paid an additional $93.16 as interest.

On April 11, 1956, Cherilyn's, Inc., by Jean Cloke, president, executed a note in the principal sum of $6,250, payable to the order of appellant, due 180 days after date, and bearing interest at five per cent per annum from date. This note was immediately assigned by appellant to Mathis with recourse, and Mathis gave appellant his check for $3,100 on an agreement to pay $5,000 for the note, Mathis retaining $1,900 of the purchase price to cover another debt owing to him by Mrs. Cloke. Mrs. Cloke got credit for the proceeds of the $3,100 check; that and the $1,900 credit being all she or Cherilyn's, Inc., got for the note.

Also, on April 11, 1956, Cherilyn's, Inc., by Jean Cloke, president, executed a note in the principal sum of $12,500, payable to the order of appellant, with interest from date at five per cent per annum, and payable in 180 days. Appellant immediately assigned the note to Stamps, with recourse, and Stamps gave appellant his check for $10,000, the proceeds of which constituted all that Mrs. Cloke or Cherilyn's, Inc., got for the note. Appellant made the following payments on the $12,500 note: October 11, 1956, $187.50 "on the principal" and $312.50 "on the interest"; December 13, 1956, $500 "on the principal" and $207.44 "on the interest."

Appellant made the following payments on the $6,250 note: October 15, 1956, $143.75 "on the principal" and $156.25 "on the interest"; December 12, 1956, $108.75 "on the interest"; December 17, 1956, $500 "on the principal."

■ We think there was usury in each note, and although the jury found that appellees did not make any loans but were merely purchasers of the notes from appellant, we think all the contracts were void as to interest, and valid only as to the amount paid by appellees for the respective notes.

Article 5071, Vernon's Ann.Civ.St., provides that all written contracts which stipulate a greater rate of interest than ten per cent shall be void for the amount of the interest. Article 5073 provides that within two years after interest at a greater rate than ten per cent is paid, the person paying it or his legal representative may recover double the amount of such interest from the person receiving the same.

■ "Under the English rule and the Spanish law, by which a contract to secure the payment of usury is absolutely void, a note given for a usurious consideration is void in the hands of an innocent indorsee for a valuable consideration. In Texas also a usurious contract gathers no vitality by its circulation, and is void as to interest in the hands of an innocent holder. It is now settled that there can be no innocent purchaser of a usurious note, either before or after maturity, and it is immaterial that there is nothing on the face of the note or the security to put the transferee on notice." 42 Tex.Jur., p. 1000, sec. 99, citing cases. See, also, 27 R.C.L., p. 244, sec. 47; National Bond & Investment Co. v. Atkinson, Tex.Civ.App., 254 S.W.2d 885.

■ The rule seems to be that an endorser may avail himself of the plea of usury whenever the maker of the obligation can do so. Annotation, 70 A.L.R. at page 359; 91 C.J.S. Usury § 132 sub. c, p. 728; Roberts v. Coffin, 22 Tex.Civ.App. 127, 53 S.W. 597; Silverman v. Bernstein, Sup., 191 N.Y.S. 192. The rule that those in privy with the borrower may avail themselves of the defense of usury embraces those who stand in the relation of sureties, guarantors, or accommodation endorsers with respect to the usurious obligation. 55 Am.Jur., p. 410, sec. 122. We think appellant was in privy with the makers of the notes, and is "a person who has an interest in the transaction which can be injuriously affected by the usury." 27 R.C.L., p. 281, sec. 83.

By Article 5073 the right to recover double the amount of usurious interest paid is given to "the person paying the same" or to his legal representative. Appellant paid $3,300 of usurious interest. Clearly, we think he can maintain the action to recover the penalty under the Article.

■ Appellees contend that appellant assumed the payment of the three notes sued upon in the cross-action of appellees when he purchased some property from the Clokes, and an assumption agreement was introduced in evidence. While there was some evidence that the assumption agreement had never been delivered by appellant to the Clokes, we think the agreement, if delivered and valid, was not sufficient to preclude his right to plead usury on the theory that to do so would be to get the property at less than the agreed price. The agreement was to "pay to the holders thereof, when due, the entire amount of principal and interest then due or owing on" certain notes. "Thus an agreement by a vendee of real estate to pay the balance on a mortgage existing on the lands he purchased, will be construed to mean what is legally due on the mortgage, and therefore will not cover usurious exactments. Likewise under a stipulation to pay the balance due on the debt, the purchaser is bound to pay only the balance legally due." 27 R.C.L., p. 289, sec. 90. Moreover, the assumption could add nothing to appellant's obligation to pay the notes, having already endorsed them with recourse. Where the person paying the usurious interest was bound on the obligation before assuming the debt in a later transaction, he is not prevented from pleading usury. Keltner v. Glenn, Tex.Civ. App., 81 S.W.2d 1051, and authorities there cited.

■ We agree with appellees that a note may be sold at a discount of more than ten per cent without thereby becoming tainted with usury. 42 Tex.Jur., p. 903, sec. 22. Such a transaction, however, does not purge a note of the usury which is already in the contract.

After allowing credit to appellant for $6,600 for double the amount of usury paid

on the $18,000 note, and crediting this amount and all other payments to the principal of the various notes, and eliminating all interest, our calculation shows that Stamps is entitled to recover of appellant the sum of $7,534.40, and that Mathis is entitled to recover of appellant the sum of $1,200.43, both amounts including ten per cent attorney's fees. The judgment is accordingly reformed so as to decree recovery for M. S. Stamps for $7,534.40 and for Lester Mathis for $1,200.43, and, as reformed, the judgment is affirmed. The costs of the appeal are adjudged against appellees.