**George JUE, Appellant,**

v.

**Irving I. BASS, Trustee, Appellee.**

**No. 17234.**

United States Court of Appeals
Ninth Circuit.

Jan. 31, 1962.

Walter East Hempstead, **Jr.,** Los Angeles, Cal., for appellant.

Quittner, Stutman & Treister by Herman L. Glatt, Los Angeles, Cal., for appellee.

Before BARNES, MERRILL and BROWNING, Circuit Judges.

BARNES, Circuit Judge.

On September 19, 1958, in Los Angeles, California, George Jue lent $15,000 to Far West Engineering Company, Inc., a corporation (hereinafter referred to as Far West). The note and chattel mortgage securing this loan originally specified the amount borrowed as $18,000. Before the signing, this $18,000 figure was changed to $15,000. Interest was payable at ten per cent, the highest legal rate in California.

Mr. Bamberger, president of Far West, testified that the amount of loan originally discussed with Jue on or about September 1st, was $25,000 for which Jue asked the corporation to sign a note for $30,000, the difference to be an "extra bonus." He also testified that on September 19, 1958, Jue wanted to lend only $15,000, but offered to lend $18,000 if $3,-000 was returned immediately by Far West. Bamberger declined this as usurious, but suggested that Jue be paid $100 per week "for consulting engineering services." Nineteen weekly voucher checks of $100 each were paid to Jue by Far West, commencing September 29, 1958, and continuing to February 2, 1959; each bearing the notation "Engineering Consulting Services." It was admitted by the pleadings Jue performed no services of any kind for Far West.

The $15,000 loan was preceded on September 19, 1958, by the execution of a document entitled "Loan Agreement." (Trustee's Ex. 3.) It called for quarterly payments on the loan of $3,750 each; provided security by way of (a) a chattel mortgage of equipment; and (b) a pledge of all outstanding capital stock of Far West; accelerated maturity, and certain prepayment provisions.

On December 11, 1958, one week before the quarterly payment of $3,750 was due Jue, Far West requested in writing

an extension of ninety days for payment of the first installment. (Resp.'s Ex. 1.) There is no evidence that written acceptance of the request for extension was obtained as requested, but the Far West check enclosed for interest at ten per cent (covering the first yearly quarter) was cashed by Jue (Trustee's Ex. 4). There is reference in Respondent's Exhibit 2 (Jue's letter of February 7, 1959) to an extension agreement of January 5, 1959. Appellant's brief admits its existence. In the state court action there is reference to an extension agreement of February 3, 1959. Any such extension agreement was "rescinded" by Jue's letter of February 7, 1959, and the eighteen $100 payments were at that time, and for the first time, credited to principal of the note; although nineteen payments had then been made.

In March 1959, Far West sold certain of the chattel security and sent $3,950 (a part of the proceeds) to Jue, on account of principal. Apparently, Jue thought Far West had sold more of the security than it had requested permission to sell, and on April 1, 1959, the full payment due March 19, 1959, not having been paid, Jue declared a default, and demanded delivery to him of the chattel security and the stock held as security. (Resp.'s Ex. 3.)

Jue then filed suit on April 6, 1959,[1] and attached. In his affidavit of attachment Jue alleged (a) that the bankrupt was indebted to him in the sum of $9,250;[2] (b) that $3,300 of said sum of $9,250 had no security; (c) that $5,950 of said sum of $9,250 was secured by the chattel mortgage which had become valueless. Writs of attachment in the amount of $9,250 were issued and levied against the Far West's debtors, bank accounts and real property.

Subsequent to the issuance of the writs of attachment, the bankrupt moved the Superior Court to quash the writs upon the ground that Jue was a secured creditor.[3] On April 22, 1959, this motion was denied.

On May 11, 1959, Far West filed Chapter XI proceedings, and was adjudicated a bankrupt on June 11, 1959.

On July 30, 1959, the trustee for the bankrupt filed a petition to declare the chattel mortgage invalid, asserting by reason of the attachment Jue was an unsecured creditor, because (a) Jue had *waived* his security; (b) Jue was *estopped* by his attaching affidavit from asserting a security interest; (c) Jue had *converted* his secured indebtedness to an unsecured indebtedness; (d) that the Superior Court order of April 22, 1958, declaring the security valueless was *res judicata*, both between Jue and the bankrupt, and Jue and the Trustee as successor to all the bankrupt's defenses; and (e) that even if Jue's secured position was valid, the indebtedness to Jue should be subordinated to all creditors' claims because of the *usury* connected with the original loan. The petition then prayed for the extinguishment of the chattel lien and for credit against the bankrupt's obligation of treble the amount of usurious interest allegedly

1. The summons was issued by the Superior Court of the State of California, in and for the County of Los Angeles, on April 6, 1959. The complaint in the record is marked "filed September 9, 1959." We assume this was the filing date of a *copy* with the referee in bankruptcy.

2. There is no check showing the amount of payment to Jue from the sale of the mortgaged chattels. Jue refers in his brief to the receipt of $3,750 (p. 2). Far West's counsel's letter of March 9, 1959, refers to the check enclosed as being for $3,950. (Resp.'s Ex. 4.) The

action to foreclose filed by Jue alleges payment to him of $3,950 as proceeds from the sale of chattels.

If $3,750 plus $1,900 were the only amounts paid on principal, the balance due at the time of attachment was $9,350.

If $3,950 plus $1,900 were the amounts paid on principal, the balance due at the time of attachment was $9,150.

The attachment, however, was for $9,250.

3. California Code of Civil Procedure, Sec. 537(1).

paid to Jue. An order to show cause was issued by the referee, and a hearing had.

We should add here that the complaint filed by Jue in the state court contained six causes of action: *The first,* for money due, based on the February 3, 1959, agreement to sell the security (Ex. B attached to the complaint, but not in the record before us), in which $1,698.11 was asked; *the second,* for money due based on the September 19, 1958 agreement, and a foreclosure of the mortgage seeking $9,250 principal plus interest; *the third,* for the value of the mortgaged property sold, covered by the September 19, 1958, agreement and allegedly not released by the February 3, 1959 agreement, in the sum of $3,300; *the fourth,* a *declaratory relief action* with respect to the Far West stock held as security in escrow by counsel for Far West; *the fifth,* for *conversion* of the mortgaged property, praying for $9,250 damages; and *the sixth,* a common count for money due in the sum of $9,250.

The referee in bankruptcy found that the weekly $100 payments were disguised payments of interest; that Jue received $2,275 in interest on the $15,000 loan within one year prior to bankruptcy (Finding IV); recited the proceedings in the state court, and concluded (a) that the agreement of September 19, 1958, was usurious, and hence null and void; (b) that treble interest credit of $6,825 against the obligation of Far West to Jue should be allowed; (c) that Jue was an unsecured creditor, upon all the grounds alleged by the trustee in his petition.

A petition for review was filed, and heard in the district court. The district court had jurisdiction to review the referee's order under 11 U.S.C.A. §§ 46 and 67(c). The court adopted in toto the findings of fact and conclusions of law entered by the referee, denying the petition for review and affirming the referee's order.

Appeal was taken here, urging six errors. We shall consider each in turn. Jurisdiction of this court is based on 11 U.S.C.A. § 47.

Errors Alleged

1. Insufficient evidence exists to support the finding of usury.

2. The bankrupt is estopped from claiming the $100 weekly payments were interest.

3. Payments made *voluntarily* after a loan has been made cannot be deemed usurious even if intended as a bonus.

4. Even if the contract were usurious, appellant received no usurious interest.

5. Any taint of usury in the original loan was purged by the subsequent reformation of the loan agreement.

6. The chattel mortgage cannot be declared null and void.

The first alleged error questions the court's finding (and the previous referee's finding) of usury. That finding rested upon conflicting testimony. If the nineteen $100 payments were interest, whether disguised as a "bonus" or "for services rendered," the contract was usurious because in excess of ten per cent. (Calif.Const. art. 20, § 22; Shirley v. Britt, 1957, 152 Cal.App.2d 666, 313 P. 2d 875.) Bamberger and Mayer testified the payments were interest and the note usurious. Jue testified the $100 paid each week was not a bonus, or interest, but for "engineering consulting services" which were never rendered. The fact that these weekly payments were originally paid "for consulting services," but that Jue purportedly applied their total to principal indicates a real question existed as to what these payments actually were. Bamberger and Mayer testified to Jue's request for a $3,000 bonus on a $15,000 loan, or a $5,000 bonus on a $25,000 loan. Jue testified there was no such conversation.

Someone was not testifying truthfully. The trier of fact below decided this issue in favor of the bankrupt. We have no power to disturb that finding of fact where it is based on some substantial conflicting evidence. Costello v. Fazio, 9 Cir. 1958, 256 F.2d 903, 908; Margolis v. Nazareth Fair Grounds & Farmers Mkt., 2 Cir.1957, 249 F.2d 221, 223; Gold v. Gerson, 9 Cir.1955, 225 F.2d

859, 860. Such substantial conflict exists here. Each side had its bias and personal interest. The referee, able to hear and see and study the witnesses during their testimony, is in a much better position than this court to determine where the balance of credibility may lie. The bankrupt's officers' testimony is far from "incredible," as appellant urges. We cannot hold that the finding that the $100 payments constituted disguised interest was clearly erroneous.

 In support of estoppel as a defense, appellant's counsel relies again on an interpretation of conflicting evidence favorable to his client, overlooking evidence against him. For the same reasons hereinabove discussed, there is no merit in this second alleged error. Furthermore, it is only when a borrower *fraudulently* inserts a usurious interest rate in order to later defeat recovery against him, that he may be estopped from using the defense of usury. Stock v. Meek, 1950, 35 Cal.2d 809, 221 P.2d 15. Cf. Massie v. Rubin, 10 Cir.1959, 270 F.2d 61 at 63.

 In support of the third alleged error (that proof of *voluntary payments* precludes usury), two California cases are relied upon: Goldenzwig v. Shaddock, 1939, 31 Cal.App.2d 719, 88 P.2d 933; Knoll v. Schleussner, 1952, 112 Cal.App. 2d 876, 881, 247 P.2d 370. Neither of these cases deals with usury in the inception of the contract, a situation which here existed. *If* the trier of fact believed the $100 payment per week was a bonus, it was first paid September 29, 1958, and could only have been pursuant to the terms of the original agreement arrived at on September 19, 1958. All parties agree that both the *fact* and *amount* of the $100 payment per week were arrived at on September 19, 1958. The dispute is restricted to the *purpose* of the payment. The trier of fact found that purpose was to supply usurious interest, and that Jue received it. This finding is binding on this court, and disposes of alleged error three.

But, says appellant, Connor v. Minier, 1930, 109 Cal.App.Supp. 770, 778, 288 P.

23, supports his position "That under California law all payments on a usurious loan will be applied to principal 'in the absence of an express application [of the payments to interest] by the parties.'" Appellant correctly quotes so much of that court's language as suits his purposes. He does not point out the quoted portion is preceded by the phrase: "*Under such circumstances * * *"* (Emphasis added.) 288 P. at 26. The circumstances in Connor v. Minier were that there were two notes involved; the first installment note provided for no interest before maturity, and the second loan note bore interest, but the interest was not due at the time the payments were made. Thus the court there found there had been no payment of interest at any time, and hence no payment of a penalty for usurious interest was warranted. Here, in Finding III, the trier of fact found payments of $100 per week as disguised interest, and specifically "as additional interest upon said $15,000 loan."

Further, in the Connor case, supra, the court said:

"When a claim of usury is made, the courts will look through the form in which the transaction is cast to discover its real substance, and if, when that is found, it appears that a borrower has paid, or agreed to pay, more than the lawful rate of interest for a loan, the loan will be held usurious. Haines v. Commercial Mortgage Company, 200 Cal. 609–616, 254 P. 956, 255 P. 805, 53 A.L.R. 725; Wallace v. Zinman, 200 Cal. 585–597, 254 P. 946, 62 A.L.R. 1341.

"Our usury law fixes 12 per cent. per annum as the maximum rate of interest that may be charged on a loan, and its manifest intent is to forbid absolutely to the lender any profit whatever by way of commission, bonus, or other kind of charge, if in so doing that rate is exceeded.

\* \* \* \* \* \*

"In the present case all the various papers which we have described are manifestly parts of one transaction by which Minier borrowed money

from the company, and all must be taken into consideration to determine whether that loan was usurious. On consideration of them all, and of the other facts stated, we have no doubt that it was." 288 P. at 24–25.

We find no merit therefore in appellant's fourth point that no interest was paid, because of the specific finding made below that interest was in fact paid.

Appellant's fifth point is that usury in the original loan was "purged" by the subsequent "agreement of February 1959," presumably February 3, 1959.

To support this position, appellant urges that "even if the twelve $100 dollar [sic] payments received by appellant prior to December 19, 1959 [sic—'1958'] were received as interest, it is respectfully urged that the seven payments received after that date must be treated as a reduction of principal." Appellant fails to note that it was not until February 7, 1959, that these $100 payments were, unilaterally, applied to principal, and that such an allocation of them was not agreed to by Far West (if in fact Far West did agree) in writing until its letter of March 9, 1959, and not orally (so the letter implies) until the Friday preceding March 9, 1959, or March 6, 1959. Appellant refers in his brief to an "understanding" that "bankrupt would discontinue the payments of $100 that had been made." We find no evidence of this in the record. Such payments did stop, in fact, on February 2, 1959, but we find no evidence of an agreement, and we are not given the advantage of advice from appellant where evidence of any such agreement may be found in the record before us.

Interest of $375 at the rate of ten per cent per annum was paid on December 12, 1958, the date it was due. *Any amount* paid in excess of that sum between September 19th and December 12th, 1958, and *any amount* paid in excess of the ten per cent interest to be due on March 19th, 1959, *if paid as interest*, was usurious.

Therefore all eleven $100 payments made prior to December 12, 1958, were usurious and at least *part* of the fourth $100 payment made on January 5, 1959, and all of the fifth, sixth, seventh and eighth payments made before February 7, 1959, were usurious interest, once the finder of fact determined they were interest payments, whether disguised or not.

We find no merit, therefore, in appellant's fifth point.

Appellant's sixth point is that the mortgage security cannot be properly declared null and void because appellant's actions in filing suit and attaching were not inconsistent with California Code of Civil Procedure, § 726, holding that "there can be but one form of action for the recovery of any debt, or the enforcement of any right secured by mortgage upon real or personal property."

Attachment under California law is a remedy given only where the debt is unsecured (Cal.Code Civ.P. § 537(1)). Section 537(1) requires that the fact that no security exists at the time of attachment (either because none did originally, or because the original security has become valueless) must be specified by affidavit made and filed before attachment will issue. "To be valueless" means "that the property pledged has ceased to have any value as a security." Williams v. Hahn, 1896, 113 Cal. 475, 477, 45 P. 815. The affidavit Jue filed states that the mortgage of chattels "has become valueless." No mention was made, and no evaluation placed, on the value of the stock of the bankrupt held in escrow.

An affidavit for attachment must state the fact that security has been given, and also that such security, without any act of plaintiff (or person to whom security was given), has become worthless. Yosemite Growers Co-op Ass'n v. Case-Swayne Co., 1946, 73 Cal.App.2d 806, 811, 167 F.2d 541. There the court quotes with approval Fisk v. French, 1896, 114 Cal. 400, 46 P. 161, where the California Supreme Court said:

" 'What the statute requires to be stated in the affidavit [for attach-

ment] must be stated, and *truly* stated, *in the affidavit;* and, if not stated *in* the affidavit, the attachment should be dissolved, even though the requisite facts, omitted in the affidavit, are alleged in the complaint. * * *' The * * * statute must be strictly followed * * *. '[W]here an affidavit alleges only that the debt is not secured by a mortgage, and fails to negative the existence of the other kinds of security, the affidavit is insufficient.' " (Citing 7 C.J.S. Attachment § 129, p. 304.) (Id. 13 Cal. App.2d at 812, 813, 167 P.2d at 544.)

Where mortgaged property is claimed to be valueless, foreclosure and sale is the proper method for determining whether any security has in fact become valueless. Security-First Nat'l Bank v. Chapman, 1939, 31 Cal.App.2d 182, 87 P.2d 724.

█ ·But the mortgagee who has the right to possession on default (as is here asserted) may bring another action, in spite of California Code of Civil Procedure, § 726, i. e., an action for replevin, for that is not an action for the recovery of the debt. Yet the statutory remedies to collect the debt must still be pursued. Jolly v. Thornton, 1940, 40 Cal.App.2d Supp. 819, 102 P.2d 467.

█ Here Jue attached for $9,250. His fifth and sixth causes of action were in that sum. He could not attach under his first cause of action to foreclose. His fifth cause of action for conversion sounded in tort rather than contract, and would be no basis for attachment unless he waived the tort and sued in assumpsit. Los Angeles Drug v. Superior Court, 1936, 8 Cal.2d 71, 63 P.2d 1124; Mills v. Brown, 1928, 205 Cal. 38, 269 P. 636.

█ Assuming Jue attached under his fifth cause of action, Jue sued for the dollar value of his security, and consented to Far West's retention of his security, and to the destruction of his mortgage lien. Bank of America N. F. & S. Ass'n v. Hill, 1937, 9 Cal.2d 495, 71 P.2d 258. Thus he waived the security interest by

suing. We do not read Mills v. Brown, supra, to the contrary. There the California Supreme Court said the action was not one upon a debt "but, on the contrary, is an action to protect the value of the security given." No stretching of the facts in the state court action wherein Jue alleged and sought to prove he had *no* security for Far West's obligation to him can turn that action into one "seeking to protect the value of the security given." No attachment, with the concomitantly required affidavits we find here, existed in Mills v. Brown, supra.

We agree with the district court that by virtue of the suit filed in the state court against the bankrupt, and by the levies of attachment Jue caused to be filed therein, George Jue became an unsecured creditor, and waived his chattel mortgage security, which is null and void against the Trustee in Bankruptcy.

Affirmed.