ARTHUR E. PEASE, a.k.a. EMERY ARTHUR PEASE,
Appellant, *v.* WESLEY S. TAYLOR, Respondent.

No. 5909

May 4, 1972                           496 P.2d 757

*Ross & Crow,* of Carson City, for Appellant.

*Lester H. Berkson,* of Stateline, for Respondent.

*Prince A. Hawkins* and *F. DeArmond Sharp,* of Reno,
Amicus Curiae.

## OPINION

By the Court, ZENOFF, C. J.:

Respondent Taylor commenced this action against appellant Pease to recover $16,500, which he claimed was due under the terms of a 90-day promissory note, plus attorney's fee and costs. The note did not recite any interest rate but did provide that the makers, in case of suit (there were two other makers, but these were not named party defendants in this action), would pay all costs and expenses and such additional sums as the court may adjudge reasonable as an attorney's fee in said suit or action. The district judge found in favor of Taylor and against Pease and awarded him a judgment in the sum of $16,500 plus interest at seven percent per annum running from the date of the note and $2,500 attorney's fee.[1]

Pease has challenged the judgment of the district court on the grounds that (1) the $16,500 award is excessive because it includes usurious interest, (2) the $2,500 awarded as attorney's fee is not an amount supported by the record, and (3) the trial judge erred in allowing seven percent interest from the date of the note on the $16,500 award.

Taylor deposited but $12,000 in the escrow through which he received the note here concerned, and this sum was diminished by $1,100 in "loan fees" paid out of the escrow to his agents. Thus, we are concerned with a $16,500 note representing an actual cash advance of $10,900.[2]

1. The burden of proving that a transaction is usurious rests upon the party attacking it. McCullough v. Snow, 432

---

[1]This is the second time this case is before us. See Pease v. Taylor, 86 Nev. 195, 467 P.2d 109 (1970), where we remanded the case to the district court so that adequate findings of fact and conclusions of law could be made by the trial judge, to the end that the issues presented on appeal could be considered by this court.

[2]The same agents also received $2,500 in "loan fees" from another contemporaneous transaction involving appellant, who asks us to view such fees as diminishing further his obligations in the instant case. We decline to do so because the record is unclear concerning the other transaction's relationship to the one before us and concerning the present status of the obligation involved therein.

P.2d 811 (N.M. 1967); Brocke v. Naseath, 285 P.2d 291 (Cal.App. 1955). A great number of jurisdictions require the usual standard of proof in civil matters, i.e., "preponderance of the evidence," which we now adopt. See Brocke v. Naseath, supra; Knoll v. Schleussner, 247 P.2d 370 (Cal.App. 1952); Damboorajian v. Woodruff, 214 N.W. 113 (Mich. 1927); 51 A.L.R.2d 1087 (1957).

2. The exaction of a broker's fee by the lender or his agent is to be considered in computing the amount of interest due from the borrower. National American Life Ins. Co. v. Bayou Country Club, 403 P.2d 26 (Utah 1965); Clarke v. Horany, 27 Cal.Rptr. 901, 903 (Cal.App. 1963).

The court will look to the substance of the transaction and the intent of the parties in determining whether an agreement is usurious. Kline v. Robinson, 83 Nev. 244, 428 P.2d 190 (1967). In the absence of actual expense, the exaction of additional compensation for the use of money under the guise of a "broker's fee" violates the spirit, if not the letter, of the laws prohibiting usury. Brokers who negotiate loans may be lawfully reimbursed for their services, as for example, where one negotiates a loan through a third party with a money lender and the latter bona fide lends the money at a legal rate of interest, the transaction is not made usurious merely by the fact that the intermediary charges the borrower with a broker's commission, the intermediary having no legal or established connection with the lender.[3] Or, when an agent authorized to lend money for his principal exacts, without knowledge or authority of such principal, money from the borrower for his own benefit, this does not make the transaction usurious. However, when a lender, through his authorized agent, makes loans under a general agreement that the lender's agent must look to the borrower for a commission, this may make the contract usurious, whether the lender knew of the charge or not.

In the instant case the evidence establishes that the commissions were not legitimate loan expenses. Uncontroverted evidence inferred that the lender either charged the fee himself or ratified such a charge. Pease having met his burden, the

---

[3] See Altherr v. Wilshire Mortgage Corporation, 104 Ariz. 59, 448 P.2d 859 (1968).

broker's fee may be computed as interest in the determination of these issues.

3. A note is to be tested for usury with reference to the actual sum given by the lender to the borrower, and not by the face of the note. Taylor v. Budd, 18 P.2d 333 (Cal. 1933). In testing for an usurious exaction, a fee or bonus beyond the legal rate of interest constitutes an additional charge for interest. Haines v. Commercial Mortgage Co., 255 P. 805 (Cal. 1927); Devers v. Greenwood, 293 P.2d 834 (Cal.App. 1956); Bochicchio v. Petrocelli, 11 A.2d 356 (Conn. 1940); Lydick v. Stamps, 316 S.W.2d 107 (Tex.App. 1958); Gilcrist v. Wright, 94 N.W.2d 476 (Neb. 1959).

4. NRS 99.050 provides in pertinent part:

"1. Parties may agree, for the payment of any rate of interest on money due, or to become due, on any contract, not exceeding, however, the rate of 12 percent per annum . . .

"2. Any agreement for a greater rate of interest than herein specified shall be null and void and of no effect as to such excessive rate of interest."

The note in this case made no express provision for any interest payment. Nevertheless, for the reasons hereinafter set forth, NRS 99.050(2) should be read to bar the lender from recovering any interest if the *rate* has exceeded the allowable 12 percent.

The purpose of laws prohibiting usury is stated in 91 C.J.S. 570–71, Usury § 5:

"Usury statutes form a part of the public policy of the state, so that contracts which are usurious are contrary to the public policy of the state. The intent of usury statutes is to prevent the charge of an excessive rate of interest, or usurious practices, on any pretext whatever. The intent or purpose of the statute applies to extension and forbearance as well as to the original loan.

"Such statutes are enacted for the protection of the borrower and are for the prevention of extortion and unjust oppression by unscrupulous persons who are ready to take undue advantage of the necessitites [sic] of others. They proceed on the theory that a usurious loan is attributable to such an inequality in the relation of the lender and borrower that the borrower's necessities deprive him of freedom in contracting and place him at the mercy of the lender. [Footnotes omitted.]"

As stated by Justice Traynor in Stock v. Meek, 221 P.2d 15, 20 (Cal. 1950):

"The theory of [the usury] law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them.

". . .

"If no loophole is provided for lenders, and all borrowers save fraudulent ones are protected, usurious transactions will be discouraged."

In the construction of our own statute, the foregoing purpose must be kept in mind. It is also to be remembered that "usury was not illegal at common law; therefore, a statute which prohibits the exaction of usury is the source from whence stems the power of the court in dealing with such matters." Hawthorne v. Walton, 72 Nev. 62, 294 P.2d 364, 59 A.L.R.2d 519 (1956) (overruled on other grounds, 83 Nev. 244, 428 P.2d 190 (1967)).

As a general rule, a usury statute is penal in character and must be strictly construed. Crisman v. Corbin, 169 Ore. 332, 128 P.2d 959 (1942). But to strictly construe a statute does not require a court to emasculate its purpose. A usury statute manifests a legislative intent to make it more drastic against the usurer and more favorable to the borrower. Milo Theater Corp. v. National Theater Supply, 71 Idaho 435, 233 P.2d 425 (1951). The construction of the usury statute by this court in Kline v. Robinson, 83 Nev. 244, 250, 428 P.2d 190 (1967), that the sole penalty for a usurious contract consists of the denial to recover the interest exceeding the 12 percent rate, is a much too mild reprimand.

When compared to our sister jurisdictions, this reprimand amounts to no penalty at all.

The statute (NRS 99.050) makes null and void any agreement calling for a greater "rate of interest . . ." No reference is therein made to the excessive amount of interest as in the statutes of Delaware, Missouri, Ohio, Pennsylvania and Tennessee.[4] It seems logical that all interest be forfeited if the rate is illegal because our statute refers only to the rate, not the excess. By such result the true concept that usury is wrong and should be penalized is thereby met. Instead, by the view upon

---

[4]*Delaware, Code Ann., Title 6, § 2304:*

"(b) When a rate of interest for the loan or use of money exceeding that established by law has been reserved or contracted for, the borrower or debtor shall not be required to pay the creditor *the excess over the lawful rate . . .*"

*Missouri Ann. Code, § 408.050:*

". . . Any person who shall violate the foregoing prohibition of this

which the lower court relied, the lender suffers no penalty at all for charging an illegal rate.

In Arizona, if usurious interest is charged, the lender receiving such usurious interest loses the right not only to the excess interest but all interest as well. ARS 44–1202.

In Oregon, the usury statute provides, "[i]f it is ascertained in any action or suit brought on any contract that a rate of interest has been contracted for greater than is authorized by this chapter in money, [ORS 82.010(2) authorizes a maximum of 10 percent] . . . it shall be deemed usurious, and shall work a forfeiture of the entire debt so contracted to the county school fund of the county wherein such suit is brought." ORS 82.120(5). This statute was construed in Crisman v. Corbin, supra.

In California, when an agreement is usurious, any stipulation to pay interest is null and void, and no interest whatsoever is recoverable by the lender. West's Civil Code, § 1916–2; Stephans v. Herman, 225 Cal.App.2d 671, 37 Cal.Rptr. 746 (1964). As summarized by E. Glushon, The California Usury Law, 43 Cal. St. B. J. 56, 65 (1968).

"The borrower may recover all interest paid within two years on an usurious loan, not merely the usurious excess, in an action for money had and received. Such action must be brought within two years of payment but where the lender sues, the statute of limitations does not preclude the borrowers from offsetting all interest paid, so as to reduce the principal of the loan. [Footnotes omitted.]"

Furthermore, in California, a plaintiff is entitled to recover treble the amount of interest paid under the note during the

section shall be subject to be sued, for any and all sums of money *paid in excess* of the principal and legal rate of interest of any loan . . ."

*Ohio Rev. Code Ann., § 1343.04:*

"Payments of money or property made by way of usurious interest, whether made in advance or not, *as to the excess of interest* above the rate allowed by law at the time of making the contract, shall be taken to be payments made on account of principal; and judgment shall be rendered for no more than the balance found due, after deducting the excess of interest so paid."

*Pennsylvania Stat. Ann., Title 41, § 4:*

"When a rate of interest for the loan or use of money, exceeding that established by law, shall have been reserved or contracted for, the borrower or debtor shall not be required to pay to the creditor *the excess over the legal rate* . . ."

*Tennessee Code Ann., § 47–14–112:*

"A defendant sued for money may avoid *the excess over legal interest,* by a plea setting forth the amount of the usury." (Emphasis supplied.)

year preceding the action. Taylor v. Budd, 18 P.2d 333, 334 (Cal. 1933); West's Civil Code § 1916–3(a).[5]

Even in Nevada, in legislation entitled the Nevada Installment Loan and Finance Act (NRS 675.010–675.480, applicable to loans under $7,500), the legislature provided penalties comparable to those in the jurisdictions above related for any violation of the statutory provisions. NRS 675.480 provides:

*"Penalties for charging, contracting for, or receiving amounts in excess of charges permitted by chapter.*

"1. If any amount in excess of the charges permitted by this chapter is charged, contracted for, or received, except as the result of an accidental and bona fide error of computation, the contract of loan shall be void, and the licensee shall have no right to collect or receive any principal, charges or recompense whatever.

"2. The licensee and the several members, officers, directors, agents and employees thereof who shall have participated in such violation shall be guilty of a misdemeanor." See also in this connection NRS 97.305.

Therefore, it is our interpretation of NRS 99.050(2), stating that "[a]ny agreement for a greater rate of interest than herein specified shall be null and void and of no effect as to such excessive rate of interest[,]" that such excessive rate of interest includes all interest and not solely the excess.

The Nevada case holding contrary to the foregoing position, Kline v. Robinson, supra, can be distinguished on two grounds. First, the major issue in that case was whether a borrower could recover excess usurious interest voluntarily paid. Hawthorne v. Walton, supra, was overruled, and the court's attention

---

[5]West's Civil Code § 1916–3 also includes the following:

"(b) Any person who willfully makes or negotiates, for himself or another, a loan of money, credit, goods, or things in action, and who directly or indirectly charges, contracts for, or receives with respect to any such loan any interest or charge of any nature, the value of which is in excess of that allowed by law, is guilty of loan-sharking, a felony, and is punishable by imprisonment in the state prison for not more than five years or in the county jail for not more than one year. This subdivision shall not apply to any person licensed to make or negotiate, for himself or another, loans of money, credit, goods, or things in action, or expressly exempted from compliance by the laws of this state with respect to such licensure or interest or other charge, or to any agent or employee of such person when acting within the scope of his agency or employment." (Amended by Stats. 1970, c. 784, p. 1497, § 1, subject to approval by the people at a special election consolidated with the general election to be held Nov. 3, 1970.)

was focused primarily on that facet of the case. The statement that only the excess (as opposed to all) interest would be recovered was interjected summarily. Second, when the court in *Kline* stated, 83 Nev., at 250, that "such excessive rate of interest over that allowed by statute" is recoverable by the borrower, the court considered neither legislative intent nor public purpose and cited no authority in support of its statement "over that allowed by statute." Therefore, the precise issue was not subjected to such judicial deliberation as to forestall questioning at this time.

We conclude therefore that NRS 99.050(2) should be construed, as is clearly permitted by a reading of its words, so that any agreement for a usurious rate of interest is null and void as to all interest whatsoever.

Under the circumstances the award of attorney's fee, having been predicated on the trial court's assumption that the full recovery was proper, becomes excessive. Litigation was unnecessary and the client should be responsible for his attorney's fee. Yet, the borrower made no offer of judgment nor offer of payment of the principal and we expect that the lender relied upon our Kline v. Robinson, supra, which we now overrule as to the issue of usury. Under the circumstances we allow the attorney's fee modified, however, to the sum of $1,500. Further discussion concerning computation of interest is obviated.

The judgment of the trial court is affirmed, but modified, so that judgment will enter for $10,900 plus $1,500 attorney's fee and costs of the suit.[6]

Affirmed, as modified.

BATJER, MOWBRAY, and GUNDERSON, JJ., concur.

THOMPSON, J., dissenting in part only:

Parties may agree for the payment of any rate of interest not exceeding, however, the rate of 12 percent per annum. NRS 99.050(1). Any agreement for a greater rate of interest is void and of no effect as to such excessive rate of interest. NRS

---

[6]The court wishes to express its appreciation to Prince A. Hawkins and F. DeArmond Sharp of the law firm Hawkins, Rhodes & Hawkins for filing an Amicus Curiae brief in this appeal at the request of the court.

99.050(2). It is clear to me that an agreement for a rate of interest greater than 12 percent per annum is void only as to "such excessive rate," that is, the rate in excess of 12 percent per annum. In Kline v. Robinson, 83 Nev. 244, 428 P.2d 190 (1967), this court so ruled. Although we have no duty to follow an absurd or obsolete decision and blindly adhere to stare decisis (see dissenting opinion, Sargeant v. Sargeant, 88 Nev. 223, 495 P.2d 618 (1972)), the interpretation placed upon NRS 99.050 by this court in Kline is sensible. Consequently, I think that it is unwise to void such a recent holding and intrude upon the legislative province. Otherwise, I agree with today's opinion.