GORDON B. MILLER, EDDIE MILLER, AND HELEN SPENCER, APPELLANTS, *v.* DON YORK AND KATHRYN YORK, RESPONDENTS.

No. 7930

April 16, 1976                    548 P.2d 941

*Robinson & Cassas,* Reno, for Appellants.

*Stewart & Horton* and *Raymond B. Little,* Reno, for Respondents.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a judgment of the district court declaring usurious a promissory note signed by the respondents, Don and Kathryn York, made payable to Appellant Gordon B. Miller, in the principal sum of $35,000; ordering appellants to return to the Yorks (1) the sum of $7,958.85, representing moneys paid to appellants in excess of the actual amount loaned to them, (2) accrued interest thereon in the amount of $2,655.11, and (3) $1,000 attorney's fees; and permanently enjoining Miller from proceeding with foreclosure proceedings under three deeds of trust securing the aforementioned promissory note.

On March 1, 1973, the Yorks were served with notice of default and election to sell certain trust deeds that they had executed in favor of Appellant Gordon B. Miller to secure a

loan. The Yorks responded to the notice of default and election to sell by filing a complaint in the district court and moving for an injunction to prevent the sale of the properties.

The deeds of trust had been given by the Yorks to secure a promissory note dated February 25, 1966, in favor of Appellant Gordon B. Miller. The promissory note was in the sum of $35,000, payable in two years, with 10 percent interest.

Although the promissory note provided a face amount of $35,000, the Yorks received only $24,500, because a $10,-500 loan commission was paid to Appellant Gordon B. Miller, the payee on the original note. Miller received the $10,500 commission plus an additional $10,500 commission in consideration for a renewal of the note. Again at a subsequent date the note became delinquent, and Miller was paid an additional commission of $1,602.16 on or about February 13, 1970.

The Yorks' complaint in the court below, filed in response to Miller's attempt to foreclose on the deeds of trust, was filed March 1, 1973. The complaint prayed for judgment decreeing that the promissory note secured by the deeds of trust had been paid, requiring the repayment of $7,958.85 as usurious interest and the issuance of an injunction preventing the sale under the deeds of trust, and requiring reconveyance of title therein to the Yorks.

The appellants filed their answer on May 3, 1973, denying that the transaction was usurious and asserting the affirmative defense of the statute of limitations, among others. Trial was held before the court, sitting without a jury. At the conclusion of the trial, the district judge entered judgment in favor of the Yorks, declaring that the promissory note was paid in full, permanently enjoining the sale under the deeds of trust, decreeing that reconveyance should be made to the Yorks, and awarding them $7,958.85, representing past payments of usurious interest, together with accrued interest thereon in the amount of $2,655.11; attorney's fees in the sum of $1,000; and their costs of suit. From that judgment the appellants have appealed to this court.

The basis of the Yorks' claim of usury in the instant case is that they received $24,500 from the subject loan and were required to give their note in the sum of $35,000. The remainder, or $10,500, was retained by Appellant Gordon B. Miller as a fee for obtaining the loan for the Yorks. Additional sums were paid to Appellant Gordon B. Miller for various

renewals of the note that occurred over the life of the transaction. Appellants attempted to purge the transaction of its usurious nature, at trial, by claiming that Appellant Gordon B. Miller was the agent for Mrs. Ray Korn, his mother-in-law, now deceased, and that Mrs. Korn was the true lender (even though Gordon B. Miller is named as the sole payee in the promissory note and as the sole beneficiary under the deed of trust). Miller contends that he was merely acting as a broker for the loan and that his fees cannot be added to the 10 percent interest provided in the note, to make the loan usurious. Our decision in Pease v. Taylor, 88 Nev. 287, 496 P.2d 757 (1972), is controlling on this issue. There, this court said:

". . . The exaction of a broker's fee by the lender or his agent is to be considered in computing the amount of interest due from the borrower." *Id.*, 88 Nev. at 290, 496 P.2d at 759.

". . . A note is to be tested for usury with reference to the actual sum given by the lender to the borrower, and not by the face of the note. [Cite omitted.] In testing for an usurious exaction, a fee or bonus beyond the legal rate of interest constitutes an additional charge for interest. [Cites omitted.]" *Id.*, 88 Nev. at 291, 496 P.2d at 760.

". . . Brokers who negotiate loans may be lawfully reimbursed for their services, as for example, where one negotiates a loan through a third party with a money lender and the latter bona fide lends the money at a legal rate of interest, the transaction is not made usurious merely by the fact that the intermediary charges the borrower with a broker's commission, *the intermediary having no legal or established connection with the lender. . . .*" (Emphasis added; footnote omitted.) *Id.*, 88 Nev. at 290, 496 P.2d at 760.

The record shows that this transaction was not the act of an independent lender or independent broker. The close relationship between the purported lender, Korn, and the alleged broker, Miller, is evidenced by their close family relationship, in that the loan was assigned to and carried on the records of a family trust wherein George B. Miller's wife (Eddie Miller, one of the appellants) was named as a beneficiary of the income of the trust, and their children, beneficiaries of the corpus of the trust.

Transactions by which one member of a family receives commissions for alleged services in negotiating loans from another member of the family have been held usurious where they

appeared to be merely devices by which an excessive compensation was received for the loan. See Grady v. Price, 383 P.2d 173 (Ariz. 1963). We agree with the ruling of the court below that the Miller loan commission was an additional interest payment that made the entire transaction usurious, and that the Yorks were entitled to be reimbursed for all sums paid to Miller over and above the $24,500 they actually received from him.

The next issue presented is whether the recovery of those excess sums may be barred in whole or in part by the statute of limitations.

The Yorks executed the $35,000 promissory note on February 25, 1966. On January 2, 1969, the payee, George B. Miller, assigned the note to Eddie Miller, his wife, and Helen Spencer, his sister-in-law, as trustees of an *inter vivos* trust established by Miller's mother-in-law, Mrs. Korn. The Yorks paid additional renewal commissions—$10,500 on March 14, 1968, and $1,624.81 on October 29, 1970—totaling completed payments on the note of $32,458.85 by October 29, 1970. On June 21, 1968, the Yorks had paid Miller $24,-747.88 ($247.88 more than the $24,500 they had received on the original note). The court below ordered all payments above $24,500 to be remitted to the Yorks, with interest thereon at 7 percent per annum until paid. As a result, the trial court found the Yorks were entitled to $7,958.85, representing past payments of usurious interest, together with accrued interest thereon in the sum of $2,655.11, plus $1,000 for attorney's fees. In reaching this conclusion, the trial court rejected appellants' contention that the Yorks' claim was barred by the statute of limitations, stating: "The Court is of the opinion that the correct rule is that the statute of limitations has no application since it has been established that the transaction is usurious." Both parties concede, however, that an action to *affirmatively* recover usurious interest is governed by a statute of limitations. The prime issue presented to us is to determine which statute is controlling.

It is the Yorks' contention that there is no statute of limitations regarding the right of setoff as long as the usurious transaction remains unpaid and the lender attempts to enforce the same. We agree. The California courts have specifically held that as long as any part of the debt remains unpaid the usurious payments made or agreed to be made may be set off against the

whole amount and are not affected by the statute of limitations. The debtor can, at any time, set off the usurious payments where the lender seeks to collect the obligations by an action or otherwise. See Richlin v. Schleimer, 7 P.2d 711, 120 Cal. App. 40 (1932), where the court said:

". . . [W]e believe the true rule under our statute to be that, when the lender attempts at any time to enforce the usurious obligation by action or otherwise, there is no statute of limitations which bars the right of the borrower to assert the invalidity thereof as to unpaid interest, and he may do so in any appropriate manner which the circumstances may require. We deem it immaterial that, by reason of the nature of foreclosure proceedings under a deed of trust, it becomes necessary in such case for the borrower to assert his rights as plaintiff in an action seeking to enjoin the threatened foreclosure rather than as a defendant urging his defense in an action brought by the borrower [sic]." *Id.,* 7 P.2d at 713, 120 Cal.App. at 44. See also Shirley v. Britt, 313 P.2d 875 (Cal.App. 1957); Paillet v. Vroman, 126 P.2d 419, 423, 52 Cal.App.2d 297, 305 (1942), where the court restated the rule:

". . . Where the lender brings an action to recover an indebtedness, none of the usurious payments, nor payments on renewal notes, are barred by limitation so as to preclude their use in the reduction of the principal debt. . . ."

Other jurisdictions have invoked the same rule. See O'Malley v. United States Bldg. & Loan Ass'n, 298 P. 675 (Ida. 1931).

We conclude, therefore, that, inasmuch as the period of limitation cannot begin to run before payment, and since payment of interest on a usurious contract is allocated to the principal indebtedness so as to automatically reduce it at the time and to the extent of payment, the right to use the interest payment as a setoff against the principal amount of indebtedness sued for by the lender cannot be barred by a statute of limitations. To hold otherwise would do violence to the principal announced in Pease v. Taylor, *supra,* where this court stated, in quoting Justice Traynor in Stock v. Meek, 221 P.2d 15, 22 (Cal. 1950):

" 'The theory of [the usury] law is that society benefits by the prohibition of loans at excessive interest rates, even though both parties are willing to negotiate them.

" ' . . .

" 'If no loophole is provided for lenders, and all borrowers save fraudulent ones are protected, usurious transactions will be discouraged.' " *Id.,* 88 Nev. at 292, 496 P.2d at 761.

We turn to consider which statute of limitations should govern the right of persons who affirmatively sue to recover usurious interest payments and when such limitation period would begin to run in the instant case.

An examination of the schedule of payments demonstrates that the Yorks' payments did not exceed the amount of the loan until June 21, 1968, when the sum of $24,747.88 had been paid to Gordon B. Miller. Thereafter, other payments were made beginning June 30, 1969, and ending October 29, 1970, which brought the total excess to $7,958.85. The Yorks' complaint was filed herein on March 1, 1973. The question of the limitations period to be applied to the recovery of usury is one of first impression in this State. While, in Pease v. Taylor, this court did allude to the California law as to limitations on usury, 88 Nev. at 292–293, 496 P.2d at 762, this court did not decide which statute of limitations applied in the usurious loan transaction to recover the whole of any interest paid above the principal. We believe, and so hold, that the right to recover usurious interest payments is governed by our 4-year statute of limitations, as set forth in NRS 11.190, subsection 2(c).[1] In so holding, we find that the right to recover usurious interest is not predicated upon the written contract (in this case a promissory note) under which the usury was paid, but rather on a duty imposed by law to repay an unjust and unmerited enrichment. The liability based upon an obligation of this kind arises purely upon an implication of law, independent of the agreement or intention of the parties. See Edwards v. Surety Fin. Co., 30 P.2d 225 (Wash. 1935). This view accords with the great weight of authority. See Annot., 59 A.L.R.2d 519, 527 (1958). The reason given for this rule of recovery is that usury exacted by the lender is received and retained by him for the use of the borrower under an implied promise to repay him, similar to a constructive trust relationship. Thus, the 4-year statute of limitations covering actions "upon a contract,

---

[1] NRS 11.190, subsection 2(c):

"Actions other than those for the recovery of real property, unless further limited by NRS 11.205 or by or pursuant to the Uniform Commercial Code, can only be commenced as follows:

". . .

"2. Within 4 years:

". . .

"(c) An action upon a contract, obligation or liability not founded upon an instrument in writing."

obligation or liability" not predicated upon a written instrument is controlling.[2]

Finally, we must decide when the statute of limitations commences to run in an action to recover interest paid under a usurious contract. NRS 11.200 is controlling on this issue.[3] The statute starts to run from the date the last or most recent interest payment was made. In the instant case, the last interest payment was made on October 29, 1970, bringing the total excess payments over the $24,500 actually received by the Yorks to $7,958.85. This action was commenced on March 1, 1973, well within the 4-year limitation period. We therefore affirm the judgment below.

GUNDERSON, C. J., and BATJER, ZENOFF, and THOMPSON, JJ., concur.

---

[2]Cf. Plitt v. Kaufman, 53 A.2d 673 (Md. 1947); Neuscheler v. See, 36 A.2d 753 (N.J. 1944); Hawkins v. Ellis, 151 So. 569 (Miss. 1934); Clanton v. Community Fin. & Thrift Corp., 262 S.W.2d 252 (Tex. 1953); and Trautman v. Spokane Sec. Fin. Corp., 1 P.2d 867 (Wash. 1931).

[3]NRS 11.200:
"The time in NRS 11.190 shall be deemed to date from the last transaction or the last item charged or last credit given; and whenever any payment on principal or interest has been or shall be made upon an existing contract, whether it be a bill of exchange, promissory note or other evidence of indebtedness if such payment be made after the same shall have become due, the limitation shall commence from the time the last payment was made."