RUSSELL C. HARRIS, TRUSTEE OF THE ESTATE OF A. DEAN McKEE, APPELLANT, *v.* SHELL DEVELOPMENT CORPORATION, NEVADA, INC., AN ILLINOIS CORPORATION, RESPONDENT.

No. 10050

May 10, 1979                                    594 P.2d 731

*Perry & Clary,* Las Vegas, for Appellant.

*Deaner, Deaner & Reynolds,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

On March 15, 1973, Dr. A. Dean McKee executed an offer to purchase the Embassy Apartments in Las Vegas for $950,000 from Shell Development. Five thousand dollars was placed in escrow with Bar-K Realty "until such time as Buyer and Seller have reached an agreement on purchase price, and enter into a contract of sale." The balance of the purchase price was to be paid at closing. The offer was expressly "contingent upon Buyer's qualifying for adequate mortgage funds . . ." By separate letter Dr. McKee informed Bar-K that he believed he could

obtain the necessary mortgage funds from a private source in order to effect a cash sale.

McKee's offer was rejected by Sheldon Ginsburg, a principal in Shell Development. On March 19, 1973, Ginsburg forwarded a counter-offer to the Danmar Company, his Las Vegas real estate broker, advising it to inform McKee that the sales price was $1,020,000 and that "[w]e will not accept any contingencies of refinancing after the consummation of the sale."

On March 23, 1973, McKee telegraphed Ginsburg "RE EMBASSY APARTMENTS, COUNTER OFER [sic] OF MARCH 19, 1973, SALE PRICE $1,020,000.00 ACCEPTED, PROVIDED CURRENT MAI APPRAISAL IS MINIMUM OF $1,050,000."

On April 5, 1973 Ginsburg obtained the required appraisal. An escrow was opened at Stewart Title in Las Vegas, however, McKee refused to consummate the transaction and, on May 16, 1973, Ginsburg cancelled the escrow.

On February 5, 1974, Dr. McKee wrote Bar-K Realty requesting the return of the $5,000 escrow deposit. Settlement negotiations were unproductive, and on April 12, 1974, Shell Development filed suit against McKee and Bar-K for breach of contract, seeking damages in excess of $5,000.

McKee answered denying the existence of a contract, and cross-claimed against Bar-K for the $5,000 escrow deposit. When Bar-K failed to answer, a default was taken by Shell Development.

Without notice, and pursuant to a stipulation between Shell Development and Bar-K, the district court entered an order dismissing Bar-K as a party defendant conditioned upon its deposit of $5,000 with the clerk of the court. McKee was neither party to the stipulation nor notified prior to the entry of the order. Subsequently, Dr. McKee noticed his application for entry of default judgment on the cross-claim, and moved to vacate the order dismissing Bar-K.

Trial was had on February 2, 1973. On April 27, 1977 the trial court filed its findings of fact, conclusions of law, together with a Judgment and Order to the effect that Dr. McKee breached the agreement to purchase the Embassy Apartments, and awarding Shell Development $4,903.35 in damages, attorney's fees and costs. Following denial of his motion for new trial, Dr. McKee noticed this appeal.

Three issues confront us: (1) Did the district court err in dismissing Bar-K as a party defendant? (2) Did the trial court erroneously conclude that a contract existed and that appellant was guilty of a breach? (3) Was the award of damages erroneous?

*1.  The dismissal.*   Appellant contends the court erred by dismissing Bar-K as a party defendant.[1] Our Rules of Civil Procedure provide three separate methods for effecting a voluntary dismissal. The first and second methods, contained in Rule 41(a)(1), provide for dismissal by notice, and by stipulation of the parties. The third method, set out in Rule 41(a)(2), provides for dismissal by order of court "upon such terms and conditions as the court deems proper." NRCP 41(a)(2); 9 Wright & Miller, Federal Practice and Procedure: Civil § 2362 (1971). Here, the dismissal of Bar-K was without prior notice to McKee, as cross-complainant. And, since Dr. McKee did not join in the stipulation, the efficacy of the dismissal rests upon the validity of the order.

While we believe the court acted within its discretion in dismissing the complaint as against Bar-K, the dismissal could not and did not purport to dismiss appellant's cross-claim. See Slotkin v. Brookdale Hospital Center, 377 F.Supp. 275 (D.C.N.Y. 1974); Plains Growers, Inc. v. Ickes-Braun Glasshouses, Inc., 474 F.2d 250 (5th Cir. 1973). Indeed, appellant, recognizing the viability of his cross-claim, proceeded to take a default against Bar-K, after notice that the complaint against Bar-K had been dismissed. We note, however, no hearing on damages was held and no default judgment entered. Appellant has failed to demonstrate that the dismissal of the complaint against Bar-K constituted an abuse of the trial court's discretion or prejudiced his rights in any way. The cross-claim remained unaffected and appellant therefore has no grounds to complain.

*2.  The contract.*   Next, appellant argues the district court erred in its determination that a contract existed. We do not agree. Appellant's March 23 offer to purchase at $1,020,000 was accepted when respondent obtained the required appraisal. Where the trial court, sitting without a jury, makes factual determinations from conflicting evidence, those determinations will not be disturbed where, as here, they are supported by substantial evidence. General Elec. Supply v. Mt. Wheeler Power, 94 Nev. 766, 587 P.2d 1312 (1978); La Grange Construction, Inc. v. Kent Corp., 88 Nev. 271, 496 P.2d 766 (1972).

*3.  The damages.*   Finally, appellant contends that even if

---

[1]While appellant does not complain of the deposit of money by Bar-K, he does claim that the dismissal was ineffective with respect to his cross-claim. See NRCP 67.

the trial court was correct in its determination that a contract existed, no damages should have been awarded since the fair market value of the property exceeded its market price on the date of sale. Respondent, on the other hand, argues that it was properly held entitled to recover its out-of-pocket expenses and damages incurred on account of appellant's breach. We agree with respondent.

Generally, where the purchaser breaches an executory real estate contract the vendor is entitled to recover damages measured by the difference between the contract price and the market value of the land on the date of the breach. Annot., 52 A.L.R. 1511 (1928). Where, as here, the market value of the land at the time of the breach is higher than the purchase price, the vendor is entitled to only nominal damages plus proved consequential damages. The court below found specifically that respondent incurred consequential damages in the sum of $4,368.34 plus $535.00 as attorney's fees and costs of suit. The consequential damages consisted of the preparation of the MAI appraisal requested by appellant and other miscellaneous items, foreseeable at the inception of the contract. The trial court properly held appellant liable for respondent's out-of-pocket expenses.

We affirm.