FERDIE SIEVERS AND LAKE TAHOE LAND COMPANY, INC., AND KINGSBURY LEASING COMPANY, APPELLANTS, *v.* DIVERSIFIED MORTGAGE INVESTORS, A MASSACHUSETTS TRUST, ET AL., RESPONDENTS.

No. 11942

November 30, 1979                    603 P.2d 270

*Carl F. Martillaro* and *Edward Bernard,* Carson City, for Appellants.

*Fahrenkopf Mortimer Sourwine Mousel and Sloane,* Reno, for Respondents.

## OPINION

By the Court, MANOUKIAN, J.:

This is an appeal from the granting of declaratory judgment in favor of respondents. In this action, plaintiff-appellants

requested the district court to declare that the promissory note entered into between appellants and respondent, Diversified, was usurious and that all interest paid be returned to appellant.[1] Appellants also asked for damages for breach of contract.

Two issues are presented for our consideration, namely: (1) Whether the loan transaction was usurious; and (2) Whether respondent breached the contract by failing to comply with release clauses and, if so, whether appellants have a remedy. We answer both questions in the negative.

Several weeks after the commencement of this action, respondent noticed a non-judicial foreclosure sale for June 14, 1978 on the real property which secured the promissory note. Following the entry of a temporary restraining order against the proposed sale, the trial court entered a preliminary injunction enjoining the sale pending a final determination of this action. Following the trial on the merits, judgment was rendered against appellants. This court entered a stay pending appeal.

In early 1971, appellant Lake Tahoe Land Company, a Nevada Corporation, acting through its president, appellant Ferdie Sievers, attempted to secure financing in Nevada for a large building construction project. Sievers, unable to secure financing in this state, sought financing from persons outside Nevada, including Diversified. Negotiations between appellants and respondent began with most discussions in this state. Respondent Diversified is a Massachusetts business trust organized under the laws of that state and engaged in making loans throughout the United States.

On April 20, 1971, negotiations between the parties concluded with the execution of a loan agreement, promissory note, and deeds of trust in Boston, Massachusetts. The promissory note from Lake Tahoe Land Company was in the amount of $1,200,000, interest payable at 14 percent per annum. The entire remaining balance was due and payable on April 20, 1976. A second loan was made on December 7, 1972, to assist

[1]NRS 99.050 provides:

1. Parties may agree for the payment of any rate of interest on money due or to become due on any contract which does not exceed the rate of 12 percent per annum, except as otherwise provided in subsection 2.

2. If the lowest daily prime rate at the three largest United States banking institutions is 9 percent or more, the maximum rate of interest shall not exceed such lowest daily prime rate plus 3.5 percent. . . .

3. Any agreement for a greater rate of interest than specified in this section is null and void and of no effect as to such excessive rate of interest.

appellant Land Company on the first loan, which had become delinquent. Both loans were secured by two deeds of trust on appellants' land in Douglas County and by appellant Sievers' personal guarantee of the promissory note.

The notes provide that principal and interest is payable in Boston, Massachusetts. Loan disbursements came from respondent's bank account in Massachusetts and appellants' payments were deposited in that account. Additionally, the parties agreed, in Paragraph 39h of the loan agreement, that the laws of Massachusetts would control:

> The laws of the Commonwealth of Massachusetts shall govern in the interpretation, construction, enforcement, and all other aspects of the rights, obligations and duties created under the Loan, this Agreement, the Note and Mortgage, except where the law of the state in which the land is situated governs in the enforcement of the security of the loan.

Interest payments were first in default in February 1972. After the modification and new loan in December of 1972, the interest was again in default in October of 1974.

Paragraph 10 of the loan agreement provided that the lender agreed that it would execute partial releases of the property subject to the lien as set forth in the release schedule. Such releases were to be made provided that there was no default under the note, deeds of trust, or the agreement. The release schedule provided that no part of an entire tract would be released if "in the sound discretion of the Lender, the remainder of the tract is reduced in value because of the requested release." Although releases were made upon written request until September of 1974, as required by the schedule, a request for release in March of 1975 was refused. In May of 1975 Diversified informed appellants that it would not release the property because real property taxes were in arrears.

*1. The Usury Question.*

Interest in excess of twelve percent per annum in Nevada is prohibited. NRS 99.050. Here, the loan agreements both called for interest at fourteen percent per annum. In fact, the trial court found that the interest paid was actually 14.58 percent per annum for the aggregate loan. Thus, it is clear that the interest agreed to here would violate Nevada law. Pease v. Taylor, 88 Nev. 287, 291, 496 P.2d 757, 760 (1972). The record, however, is uncontradicted that the parties agreed that the laws of Massachusetts would control. Massachusetts statutes provide that interest may be assessed at no more than twenty percent per annum. Mass. Ann. Laws ch. 271, § 49 (Michie/Law.

Co-op Supp. 1979). If Massachusetts law controls, the loan will not be considered usurious.

■■■■■■■■■

It is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is controlling if the parties acted in good faith and not to evade the law of the real situs of the contract. Seeman v. Philadelphia Warehouse Co., 274 U.S. 403, 407 (1927); Bedford v. Eastern Building & Loan Ass'n, 181 U.S. 227, 242–43 (1901); Big Four Mills v. Commercial Credit Co., 211 S.W.2d 831, 836 (Ky.App. 1948); Hansen v. Duvall, 62 S.W.2d 732, 739 (Mo. 1933). Under choice-of-law principles, parties are permitted within broad limits to choose the law that will determine the validity and effect of their contract. Gamer v. DuPont Glore Forgan, Inc., 135 Cal.Rptr. 230, 234–35 (Cal.App. 1976); Grady v. Denbeck, 251 N.W.2d 864, 865 (Neb. 1977). *See* Restatement (Second) of Conflicts of Laws § 187 (1971). The situs fixed by the agreement, however, must have a substantial relation with the transaction, Seeman v. Philadelphia Warehouse Co., 274 U.S. at 408; Fahs v. Martin, 224 F.2d 387, 397 (5th Cir. 1955); Solevo v. Aldens, Inc., 395 F.Supp. 861, 864 (D.Conn. 1975), and the agreement must not be contrary to the public policy of the forum. Big Four Mills v. Commercial Credit Co., 211 S.W.2d at 837; Kinney Loan & Finance Co. v. Summer, 65 N.W.2d 240, 245 (Neb. 1954). *See generally* Annot., 125 A.L.R. 482 (1940); 45 Am.Jur.2d *Interest and Usury* §§ 18–33 (1969); 16 Am.Jur.2d *Conflict of Laws* §§ 46–51 (1964).

■■■■■■■

The lower court found that the parties acted in good faith and not for the purpose of evading forum laws. The record supports this finding. The evidence showed that appellants had to contact out of state lenders who would accommodate their needs; respondent, a business trust, transacts business throughout the country and centralizes its business in Massachusetts; with one unrelated exception, the parties stipulated to the applicability of Massachusetts laws; appellant Sievers, experienced in such business transactions, understood that those laws would be applicable and knew that the interest rate exceeded that allowed in Nevada; principal and interest was paid in Massachusetts and the loan proceeds were disbursed from there. Additionally, respondent, in order to be consistent and to provide an aura of "predictability to the real estate lending operation of the trust," had all loans and loan documents prepared, executed and processed in Massachusetts. This

included appellant Sievers' personal guarantee of the promissory note. The trial court concluded that the negotiations were conducted in Nevada to accommodate appellants and the fact that the real property securing the loan was located in this state is inconsequential. National Surety Corp. v. Inland Properties, Inc., 286 F.Supp. 173, 188 (E.D.Ark. 1968).

There is no doubt here but that Massachusetts is the state with the dominant interest. There was substantial evidence to support the finding below that the transaction had a substantial relationship with Massachusetts. These findings by the lower court also preclude a finding that this was an adhesion contract which would invalidate the stipulation. *See* Big Four Mills v. Commercial Credit Co., 211 S.W.2d at 836–37; Ehrenzweig, *Adhesion Contracts in the Conflict of Laws,* 53 Colum.L.Rev. 1072, 1077–79 (1953).

Appellant contends that the interest provision in the contract is violative of Nevada public policy and, as such, Massachusetts law is inapplicable. Appellants rely on Pease v. Taylor, 88 Nev. 287, 496 P.2d 757 (1972). Although *Pease* held that our usury laws formed part of the public policy of this state, there is no evidence to suggest that NRS 99.050 was intended to have extra-territorial effect. Absent legislative direction, we are under no compulsion to apply the statute here. The statute may not abrogate rights of parties contracting beyond the state's jurisdiction, having little or no relation to anything done or to be done within Nevada. Home Insurance Co. v. Dick, 281 U.S. 397, 410 (1930). Because the transaction in *Pease* was wholly within this state, appellants' reliance is misplaced.

Appellants argue that out of state lenders must be placed on a parity with lenders within the state so as not to give license to the former simply because the borrower has stipulated to the charge. A crucial function of choice-of-law rules is that their application should further harmonious relations between states and facilitate commercial intercourse between them. If we disregard this important conflicts function here because a contract provision is not in accord with our statutes and thus violative of a strong forum public policy, we would perhaps rarely find another state's laws controlling. Consequently, the clear intentions of the parties would be defeated.

Nevada's statutory changes to higher interest rates reflect an awareness by our legislature that interest is escalating elsewhere. *See* 1979 Nev. Stats. ch. 498, § 2, at 963–64; 1975 Nev. Stats. ch. 758, § 1, at 1794. There will often be times when a

rate outside of this state must be used. NRS 99.050(2) (use of prime rate). If the parties have stipulated, as in the instant case, to a fair and reasonable rate of interest valid under the laws of a state to which the transaction has a substantial nexus, and there is not a clear effort to evade our state law, the provision should not be found violative of our public policy unless the rate is substantially above what our law allows so as to shock the conscience of this court. Trinidad Industrial Bank v. Romero, 466 P.2d 568, 571-72 (N.M. 1970). *See* Solevo v. Aldens, Inc., 395 F.Supp. at 865-66; National Surety Corp. v. Inland Properties, Inc., 286 F.Supp. at 188-89. Here, there is no substantial evidence that Diversified's intent was to do anything other than to have all of its loan transactions governed by the laws of its domicile.

*2. The Breach.*

Appellants contend that respondent was in breach of contract when it failed to release portions of the secured property under a provision of the loan agreement, pursuant to written requests by appellants in March of 1975. Appellants argue that this material failure was without justification and, as a result, relieved appellants of their duty to pay subsequent interest.

The findings of the lower court were that appellants were delinquent on taxes and assessments, interest was overdue, and that appellants re-distributed the lot densities without securing the required approval of Diversified, thereby creating a potential impairment of security in violation of the contract. Findings will not be overturned on appeal when, as here, they are supported by substantial evidence. Harris v. Shell Development Corp., 95 Nev. 348, 351, 594 P.2d 731, 733 (1979).

We affirm the judgment of the lower court. We also dissolve this court's order which stayed the proposed non-judicial sale of the real property.

Mowbray, C. J., and Thompson and Batjer, JJ., concur.

Gunderson, J., concurring:

I concur in the result.