**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PROGRESSIVE GULF INSURANCE
COMPANY, an Ohio corporation,
*Plaintiff-Appellant,*

v.

RANDALL K. FAEHNRICH,
individually and as natural parent
and/or legal guardian of RANDY
FAEHNRICH and CHRISTIAN
FAEHNRICH, minors; TONI A.
FAEHNRICH, individually and as
natural parent and/or legal
guardian of RANDY FAEHNRICH and
CHRISTIAN FAEHNRICH, minors,
*Defendants-Appellees.*

No. 09-16487

D.C. No.
CV-05-1067-BES

ORDER
CERTIFYING A
QUESTION TO
THE SUPREME
COURT OF
NEVADA

Filed December 7, 2010

Before: Robert R. Beezer, Andrew J. Kleinfeld, and
Susan P. Graber, Circuit Judges.

Order;
Dissent by Judge Kleinfeld

---

## COUNSEL

Dennis M. Prince, Prince & Keating LLP, Las Vegas,
Nevada, for the plaintiff-appellant.

Brett A. Carter, Benson Bertoldo Baker & Carter, Chtd., Las
Vegas, Nevada, for the defendants-appellees.

---

# ORDER

Pursuant to Rule 5 of the Nevada Rules of Appellate Procedure, we respectfully certify to the Supreme Court of Nevada the question of law set forth in Section III of this order. That question will determine an issue pending before this court. No precedent in the decisions of the Supreme Court of Nevada controls that issue.

## I.    *Background*

The parties stipulated to the relevant facts. Progressive Gulf Insurance Company issued an automobile insurance policy to Randall and Toni Faehnrich, who had two minor children. At the time of contracting, the Faehnrichs resided in Mississippi. The policy contained a Mississippi choice-of-law provision and set coverage limits for bodily injury of $100,000 per person and $300,000 per occurrence. The policy expressly did not cover family members' bodily injuries.

The Faehnrichs divorced, and Toni Faehnrich moved from Mississippi to Nevada with the two children. Shortly thereafter, while the policy remained in effect, Toni had a one-car accident in the insured vehicle. The accident occurred in Las Vegas, Nevada. The two minor children, who were riding in the car at the time of the accident, sustained bodily injuries.

Randall Faehnrich, as the children's natural father and legal guardian, presented a claim to the insurer. The insurer denied coverage because of the family-member exclusion. Thereafter the insurer brought this diversity action seeking, among other things, an order declaring that the family-member exclusion is valid and enforceable in Nevada.

The parties moved for summary judgment. The insurer argued that the exclusion is enforceable because the Nevada courts must apply Mississippi law pursuant to the contract's choice-of-law provision. The Faehnrichs argued that Nevada

public policy requires that they receive the statutory minimum coverage provided in Nevada Revised Statutes section 485.3091. The parties stipulated that, "if Mississippi law is applicable, there is no coverage under the terms and conditions of the Progressive policy." On the other hand, they agreed that, if Nevada law applies, the coverage limits would be $15,000 per person and $30,000 per occurrence as provided in the statute, the insurer would owe the full $30,000, and the insurer would owe a duty to defend and indemnify Toni up to those statutory limits. The insurer waived "any other coverage defenses that exist now or may previously have existed."

The district court granted judgment to the Faehnrichs, holding that Nevada public policy precludes application of the family-member exclusion to bar all recovery. The insurer appeals.

## II.   *Discussion*

In our judgment, this case presents an important, open question of Nevada law. We review de novo a district court's decision concerning the appropriate choice of law, *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000), and we apply Nevada's choice-of-law rules as we think the Supreme Court of Nevada would apply them, *id.*; *Takahashi v. Loomis Armored Car Serv.*, 625 F.2d 314, 316 (9th Cir. 1980). Because we have doubts about how the Supreme Court of Nevada would apply those rules here, we seek its guidance.

Nevada uses a multi-factor test to determine whether to enforce a choice-of-law provision in a contract. *Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Investors*, 603 P.2d 270, 273 (Nev. 1979). The parties must have acted in good faith, without an intent to evade the law of the state where the contract was formed; the situs of the chosen law must have a substantial relationship to the contract; and the terms of the contract may not contravene Nevada public pol-

icy. *Id.* So long as the parties satisfy these factors, the contract's choice-of-law provision must be given effect. *Id.*

We hold that the parties have satisfied all of the factors but the last, as to which we are in doubt. There is no evidence that the parties acted in bad faith or that they attempted to evade the laws of Mississippi. Mississippi had a substantial relationship to the contract because the Faehnrichs resided there when the policy was issued and for some time afterward. The one question that remains is whether the policy's family-member exclusion, which would deny any recovery to the Faehnrichs if we apply Mississippi law, contravenes Nevada's public policy.

At least one case, *Sotirakis v. United Service Automobile Ass'n*, 787 P.2d 788 (Nev. 1990) (per curiam), suggests that the exclusion may apply without offending Nevada public policy. In that case, two California residents with a California insurance policy had an accident while traveling in Las Vegas. *Id.* at 789. The policy contained a family-member exclusion, which California allowed. *Id.* The Supreme Court of Nevada affirmed the application of California law, holding that the family-member exclusion did not violate Nevada's public policy. *Id.* at 792.

By contrast, at least one other Supreme Court of Nevada case, *Williams v. United Services Automobile Ass'n*, 849 P.2d 265 (Nev. 1993) (per curiam), suggests that Nevada public policy would disallow reliance on the exclusion here. In *Williams*, another California resident suffered injuries from a car accident in Nevada. *Id.* at 265-66. As in *Sotirakis*, the Court had to decide which law to apply. *Id.* at 266. The Court looked back at its prior cases and interpreted them to mean that Nevada public policy bars the application of another state's law only if it would "preclude *all* recovery for the injured insured." *Id.* at 267. Because the plaintiff had recovered $300,000 already, the Court held that California law could be applied to bar additional relief. *Id.* As noted, in this

case, application of Mississippi law *would* "preclude *all* recovery for the injured insured." *Id.*

We are not persuaded that *Sotirakis* controls this case. *Sotirakis* approved the application of California law to a contract that covered California residents who happened to have an accident while driving through Nevada. The singular connection between the injured passenger and Nevada was the location of the accident. 787 P.2d at 791. The court declined to rely on such a "fortuitous" circumstance, worrying that "[i]f this were enough to apply a state's law, then laws would be applied according to the fortuity of where the accident occurred rather than by the provisions of the insured's policy." *Id.*

That concern does not apply here. In this case, the injured parties were Nevada residents, which, under Nevada case law, creates a more substantial relationship to the insurance contract. In *Daniels v. National Home Life Assurance Co.*, 747 P.2d 897, 899 (Nev. 1987) (per curiam), for example, the Supreme Court of Nevada emphasized Nevada's "overriding concerns of protecting its citizens and [e]nsuring that they are afforded fair and equitable treatment by insurers." Those overriding concerns, together with the absence of the fortuitous circumstance that drove the court's decision in *Sotirakis*, lead us to conclude that we cannot ignore the passage in *Williams* that clearly suggests that Nevada law might apply here.

On the other hand, we recognize that *Williams* cited *Sotirakis* with approval (at least with respect to the factors that bear on the analysis), and the key sentence in *Williams* may be dictum. Accordingly, we respectfully certify the following question to the Supreme Court of Nevada.

## III.  *The Question Certified*

Does Nevada's public policy preclude giving effect to a choice-of-law provision in an insurance contract that was

negotiated, executed, and delivered while the parties resided outside of Nevada, when that effect would deny any recovery under Nevada Revised Statutes section 485.3091 to Nevada residents who were injured in Nevada?

IV.   *Conclusion*

This appeal presents an open question of Nevada state law that will determine the outcome of this case. We respectfully request that the Supreme Court of Nevada accept and decide the question certified. We recognize that the Court may, in its discretion, reword the certified question. We agree to abide by the Court's decision as specified by Rule 5(h) of the Nevada Rules of Appellate Procedure, which states that "[t]he written opinion of the Supreme Court stating the law governing the questions certified . . . shall be res judicata as to the parties."

The clerk of this court shall forward a copy of this order, under official seal, to the Supreme Court of Nevada, along with copies of all briefs and excerpts of record that have been filed with this court. The parties shall notify the clerk of this court within 14 days of any decision by the Court to accept or decline certification. If the Court accepts certification, the parties shall then notify the clerk of this court within 14 days of the issuance of that court's opinion.

IT IS SO ORDERED.

SUSAN P. GRABER
Circuit Judge, U.S. Court of
Appeals for the Ninth Circuit

KLEINFELD, Circuit Judge:

I respectfully dissent from the order certifying this case to the Nevada Supreme Court. I do not think we need to burden the parties and the Nevada Supreme Court with an additional round of litigation, because this case is controlled by *Sotirakis v. United Service Automobile Association*.[1]

The policy was issued to Mr. and Mrs. Faehnrich when they both lived in Mississippi. Progressive mailed the policy to the Faehnrichs' address in Mississippi. The premiums charged were Mississippi-based, and the policy covered cars garaged in Mississippi. The policy provides that Mississippi law controls.

The only connection with Nevada is that after purchasing the policy in Mississippi, the Faehnrichs divorced and Mrs. Faehnrich moved to Nevada. Their children flew out to Nevada the day before Mrs. Faehnrich had her one-car accident. Under *Sotirakis*, that does not furnish a basis for applying Nevada law.

In *Sotirakis*, the Nevada Supreme Court held that California law applied to a California insurance contract containing a family exclusion clause between California parties.[2] There, Sotirakis, a California resident covered by a California insurance policy, got into a car accident in Nevada. Her insurance policy contained a family exclusion clause, valid in insurance contracts under California law, but invalid in insurance contracts under Nevada law.[3] Applying Nevada's choice-of-law test, the Nevada Supreme Court found that all four factors weighed in favor of applying California law: "the policy was issued in California to a California resident who paid premiums in California . . . based on California, rather than another

---

[1]787 P.2d 788 (Nev. 1990).

[2]787 P.2d 788, 792 (Nev. 1990).

[3]*Id.* at 789.

state's, rates," and the parties "bargained for an insurance policy which contains a family exclusion clause."[4]

*Sotirakis* is easily reconciled with the one sentence of dicta in *Williams v. United Services Automobile Association*[5] and the holding in *Daniels v. National Home Life Assurance*[6] which provide the sole support for the argument that Nevada law applies.

In *Daniels*, William Daniels, a Nevada resident, applied for and received life insurance from a Pennsylvania company.[7] The policy contained a choice-of-law provision stating that Missouri law governed. The insurer argued that the policy was a group policy and the master policy had been delivered to a Missouri company in Missouri. Daniels failed to pay his third quarterly premium. The insurance company canceled the insurance policy, but failed to notify Daniels of the cancellation. Notice was not required under Missouri law. A few months after his policy was canceled, Daniels was killed in Las Vegas, Nevada, and his wife brought suit after being denied the benefits of Daniels's life insurance policy due to cancellation for nonpayment.

The Nevada Supreme Court refused to apply Missouri law because the policy was not a group policy at all, just an individual policy purchased by a Nevadan, in Nevada, delivered in Nevada, from a Pennsylvania company.[8] The purported Missouri situs was more or less fraudulent. So, the policy was subject to Nevada's notice provision.[9] *Daniels* does not hold that public policy is violated when application of another

---

[4]*Id.* at 790-91.

[5]849 P.2d 265 (Nev. 1993).

[6]747 P.2d 897 (Nev. 1987).

[7]*Id.* at 898.

[8]*Id.* at 899.

[9]Nev. Rev. Stat. § 687B.320.

state's law would preclude coverage to an out-of-state resident on an out-of-state policy, merely that an exclusion denying coverage for a *Nevada* resident under an insurance contract delivered in Nevada would violate public policy. Thus, *Daniels* does not control.

Nor does *Williams*. There, plaintiff-appellant Williams was a member of the Air Force stationed in California but was injured in a car accident during an assignment in Nevada.[10] He sued after he was denied coverage for damages pursuant to his California underinsured motorist coverage, arguing that the law of Nevada should apply because applying California law would violate Nevada's public policy.[11] The Nevada Supreme Court upheld the application of California law to his California insurance policy.[12] Although *Williams* says in one sentence of dicta that the Court had previously "applied Nevada public policy only where other states' laws would preclude *all* recovery for the injured insured,"[13] this comment could not mean that where another state's law would preclude recovery, then its law could not apply. If it did mean that, then *Sotirakis* (the Nevada Supreme Court's decision relied on by *Williams* as controlling authority) would have come out the other way. *Williams* cited *Sotirakis* with approval,[14] and did not purport to overrule or limit it.

The Nevada Supreme Court explained in *Ferdie Sievers and Lake Tahoe Land Company, Inc. v. Diversified Mortgage Investors*, "[a] crucial function of choice-of-law rules is that their application should further harmonious relations between states and facilitate commercial intercourse between them. If we disregard this important conflicts function here because a

---

[10]849 P.2d 265, 265 (Nev. 1993).

[11]*Id.* at 266.

[12]*Id.* at 267.

[13]*Id.*

[14]*Id.* at 266-67.

contract provision is not in accord with our statutes and thus violative of a strong forum public policy, we would perhaps rarely find another state's laws controlling. Consequently, the clear intentions of the parties would be defeated."[15]

In this circumstance, I do not believe that Nevada would impose its public policy regarding insurance contracts and the family member exclusion on Mississippi any more than Mississippi could impose its public policy on Nevada. That one of the parties had moved to Nevada shortly before the car accident does not furnish a basis for imposing Nevada policy on the contract, because the conduct leading to the contract (as opposed to the accident) did not take place in Nevada. As *Sotirakis* explained, in upholding the out-of-state choice-of-law provision in the insurance contract at issue, "[t]he contacts with the state where the accident occurred are fortuitous; the only contact which Nevada had with the insureds was the mere fact that it was the state in which the insureds happened to have an accident. If this were enough to apply a state's law, then laws would be applied according to the fortuity of where the accident occurred rather than by the provisions of the insured's policy."[16]

Because I think the law is clear and the Nevada Supreme Court has never held that Nevada public policy is violated by application of an out-of-state family member exclusion clause in an insurance policy issued out-of-state to out-of-state residents, I think it is unfortunate that we are imposing this very considerable burden on the Supreme Court of Nevada, and imposing considerable additional work, uncertainty, expense, and delay on the litigants in this case.

---

[15]603 P.2d 270, 274 (Nev. 1979).

[16]*Sotirakis*, 787 P.2d at 791.