**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PROGRESSIVE GULF INSURANCE
COMPANY, an Ohio corporation,
                *Plaintiff-Appellant*,

                v.

RANDALL K. FAEHNRICH,
individually and as natural parent
and/or legal guardian of RANDY
FAEHNRICH and CHRISTIAN
FAEHNRICH, minors; TONI A.
FAEHNRICH, individually and as
natural parent and/or legal guardian
of RANDY FAEHNRICH and
CHRISTIAN FAEHNRICH, minors;
DOES I THROUGH X; ROE BUSINESS
ENTITIES I THROUGH X; inclusive,
                *Defendants-Appellees*.

No. 09-16487

D.C. No.
2:05-cv-01067-
BES-PAL

OPINION

Appeal from the United States District Court
for the District of Nevada
Brian E. Sandoval, District Judge, Presiding

Argued and Submitted
October 6, 2010—San Francisco, California

Filed May 7, 2014

Before:  Andrew J. Kleinfeld, Susan P. Graber,
and Richard C. Tallman,[*] Circuit Judges.

Per Curiam Opinion

---

[*] Judge Beezer was a member of the panel but passed away after oral argument.  Judge Tallman was drawn to replace him.  He has read the briefs, reviewed the record, and listened to the audio recording of oral argument held on October 6, 2010.

## SUMMARY[**]

### Nevada Insurance Law

The panel reversed and remanded to the district court for entry of summary judgment in favor of Progressive Gulf Insurance Company after the Nevada Supreme Court answered a certified question concerning choice-of-law in an insurance contract.

The panel certified a question to the Nevada Supreme Court, and the Nevada Supreme Court rephrased the question. The Nevada Supreme Court held that Nevada public policy did not "preclude giving effect to a household exclusion clause in an automobile liability insurance policy delivered in Mississippi to Mississippi residents and choosing Mississippi law as controlling, where Mississippi law permits household exclusions but the effect of the exclusion is to deny Nevada residents who were injured in Nevada recovery of the minimum coverages specified in NRS 485.3091."

The panel held that because Mississippi law applied, summary judgment should have been granted in favor of Progressive Gulf Insurance Company where the parties stipulated that if Mississippi law applied, there was no coverage under the Progressive Gulf Insurance Company policy.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Dennis M. Prince, Prince & Keating LLP, Las Vegas, Nevada, for Plaintiff-Appellant.

Brett A. Carter, Benson Bertoldo Baker & Carter, Chtd., Las Vegas, Nevada, for Defendants-Appellees.

**OPINION**

PER CURIAM:

Progressive Gulf Insurance Company seeks review of the district court's order denying its motion for summary judgment and of a later order entering judgment in favor of the defendants. The sole issue before us is whether Nevada or Mississippi law applies to the parties' insurance contract. Because Mississippi law applies, we reverse the judgment of the district court.

Randall and Toni Faehnrich lived in Mississippi with their two minor children. They contracted with Progressive Gulf for automobile insurance. The policy was delivered in Mississippi. It covered cars garaged in Mississippi, bearing Mississippi license plates, driven by Mississippi-licensed drivers. The policy specified that it was governed by Mississippi law.

The Faehnrichs divorced and, in 2003, Toni Faehnrich moved to Nevada. On June 8, 2003, Toni Faehnrich was involved in a rollover vehicle accident while the two children were passengers in her car. Randall Faehnrich presented a bodily injury claim to Progressive Gulf on behalf of the

children, which Progressive Gulf denied, citing the policy's family-member exclusion.

The parties stipulated that, "if Mississippi law is applicable, there is no coverage under the terms and conditions of the Progressive policy." We certified the following question to the Nevada Supreme Court:[1]

> Does Nevada's public policy preclude giving effect to a choice-of-law provision in an insurance contract that was negotiated, executed, and delivered while the parties resided outside of Nevada, when that effect would deny any recovery under Nevada Revised Statutes section 485.3091 to Nevada residents who were injured in Nevada?

The Nevada Supreme Court chose to rephrase the question, as is its prerogative. Rephrased, the question the Nevada Supreme Court answered was:[2]

> Does Nevada public policy preclude giving effect to a household exclusion clause in an automobile liability insurance policy delivered in Mississippi to Mississippi residents and choosing Mississippi law as controlling, where Mississippi law permits household exclusions but the effect of the exclusion is to deny Nevada residents who

---

[1] *Progressive Gulf Ins. Co. v. Faehnrich*, 627 F.3d 1137 (9th Cir. 2010).

[2] *Progressive Gulf Ins. Co. v. Faehnrich*, No. 57324, 2014 WL 1258808, at *2 (Nev. March 27, 2014).

were injured in Nevada recovery of the minimum coverages specified in NRS 485.3091?

The Nevada Supreme Court answered this question in the negative, holding that "giving effect to the choice-of-law provision in the parties' automobile insurance policy does not violate Nevada's public policy."[3]  Because Mississippi law applies, summary judgment should have been granted in favor of Progressive Gulf.  The facts and reasoning are fully set out in the Nevada Supreme Court's decision, *Progressive Gulf Ins. Co. v. Faehnrich*, No. 57324, 2014 WL 1258808 (Nev. March 27, 2014), which we attach as an appendix.

**REVERSED AND REMANDED** for entry of summary judgment in favor of Progressive Gulf Insurance Company.

---

[3] *Progressive Gulf Ins. Co.*, 2014 WL 1258808, at *6.

**APPENDIX**

Case: 09-16487    04/01/2014    ID: 9040274    DktEntry: 25    Page: 1 of 15

09-16487

130 Nev., Advance Opinion 19

IN THE SUPREME COURT OF THE STATE OF NEVADA

PROGRESSIVE GULF INSURANCE
COMPANY, AN OHIO CORPORATION,
Appellant,
vs.
RANDALL K. FAEHNRICH,
INDIVIDUALLY AND AS NATURAL
PARENT AND/OR LEGAL GUARDIAN
OF RANDY FAEHNRICH AND
CHRISTIAN FAEHNRICH, MINORS;
AND TONI A. FAEHNRICH,
INDIVIDUALLY AND AS NATURAL
PARENT AND/OR LEGAL GUARDIAN
OF RANDY FAEHNRICH AND
CHRISTIAN FAEHNRICH, MINORS,
Respondents.

No. 57324

FILED

MAR 27 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Certified question under NRAP 5 concerning the enforceability of a household exclusion clause in an automobile liability insurance policy issued out of state but applied to Nevada residents injured in Nevada. United States Court of Appeals for the Ninth Circuit; Robert R. Beezer, Andrew Jay Kleinfeld, and Susan Graber, Circuit Judges.

*Question answered.*

Prince & Keating and Dennis M. Prince and Douglas J. Duesman, Las Vegas,
for Appellant.

Benson Bertoldo Baker & Carter, Chtd., and Brett A. Carter, Las Vegas,
for Respondents.

14-09686

Case: 09-16487     04/01/2014      ID: 9040274     DktEntry: 25     Page: 2 of 15

BEFORE THE COURT EN BANC.

## OPINION

By the Court, PICKERING, J.:

The United States Court of Appeals for the Ninth Circuit has certified the following question to this court: "Does Nevada's public policy preclude giving effect to a choice-of-law provision in an insurance contract that was negotiated, executed, and delivered while the parties resided outside of Nevada, when that effect would deny any recovery under NRS 485.3091 to Nevada residents who were injured in Nevada?"

I.

The certified question grows out of a dispute over the validity of a household exclusion in an automobile liability insurance policy. The policy was negotiated, delivered, and renewed several times in Mississippi, where Randall and Toni Faehnrich lived with their two children. The policy was entitled "Mississippi Motor Vehicle Policy." The Faehnriches' insurance application listed Mississippi as their state of residence. This made Mississippi the state whose statutory law the policy incorporated:

> **TERMS OF POLICY CONFORMED TO STATUTES**
>
> If any provision of this policy fails to conform with the legal requirements of the state listed on your application as your residence [Mississippi], the provision shall be deemed amended to conform with such legal requirements. All other provisions shall be given full force and effect. *Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on your application as your residence.*

(Emphasis added.)    The parties and the Ninth Circuit refer to the italicized language as the policy's choice-of-law provision.

SUPREME COURT
OF
NEVADA

(O) 1947A

2

Case: 09-16487    04/01/2014    ID: 9040274    DktEntry: 25    Page: 3 of 15

Eventually, the couple divorced and Toni moved to Nevada. She drove here in a Jeep that she and Randall co-owned.[1] The couple's minor children, both boys, then flew out to join their mother in Las Vegas. The next day, while driving the Jeep with the children as passengers, Toni was involved in a single-car accident; the car rolled, and the boys suffered serious injuries. At the time, the Jeep still carried Mississippi registration and license plates, and Toni had a Mississippi driver's license.

The insurance policy, issued by Progressive Gulf Insurance Co., generally provides bodily injury liability coverage up to $100,000 per person and $300,000 per accident. But it includes a household exclusion that, on its face, eliminates coverage for the boys' claims against Toni. The exclusion states that the policy's liability coverage "does not apply to . . . bodily injury to you or a relative." "Relative" is defined as

> a person residing in the same household as you, and related to you by blood, marriage, or adoption . . . . Your unmarried dependent children temporarily away from home will be considered residents if they intend to continue to reside in your household.

When the policy was issued, Progressive offered, but the Faehnriches declined, "All Uninsured/Underinsured Bodily Injury . . . Coverage."

Randall presented a claim to Progressive for his sons' injuries. Citing the household exclusion, the insurer denied coverage. Progressive then brought a declaratory judgment action in Nevada federal district court, followed by a motion for summary judgment, seeking, among other

---

[1]The Ninth Circuit describes the Jeep as an "insured vehicle." We accept that designation. *See In re Fontainebleau Las Vegas Holdings, L.L.C.*, 127 Nev. ___, ___, 267 P.3d 786, 794-95 (2011).

 

Case: 09-16487     04/01/2014     ID: 9040274     DktEntry: 25     Page: 4 of 15

things, an order declaring the household exclusion valid and applicable. Stressing that "[t]he family member [or household] exclusion does not [afford] the minimum [$15,000/$30,000 bodily injury] coverage required by the Nevada Insurance Code," *see* NRS 485.185; NRS 485.3091, the district court denied summary judgment. It held that the "exclusion violates Nevada public policy [and] is unenforceable; and, in accordance with Nevada choice of law rules, Mississippi law [validating such exclusions] cannot apply."

Progressive appealed. Because the order denying summary judgment did not resolve the case, the Ninth Circuit dismissed the first appeal for lack of a final, appealable judgment. There followed a stipulation designed to convert the summary judgment denial into a final judgment. In the stipulation, the parties "agreed that if Mississippi law is applicable, there is no coverage under the terms and conditions of the Progressive policy." They further agreed that, "[i]n the event that Nevada law is applicable, Progressive would owe a duty to . . . indemnify [Toni] Faehnrich consistent with the terms and conditions of its policy up to the applicable limits of $15,000.00 per person and $30,000.00 per occurrence," and that this would entitle the two children to $15,000 apiece for their bodily injuries. In the stipulation "Progressive waives any other coverage defenses," and both sides agree that "there are no other issues to adjudicate."

A second Ninth Circuit appeal followed. After briefing and argument, a divided panel concluded that this case turns on an unsettled question of Nevada public policy and certified that question to this court.

Case: 09-16487    04/01/2014    ID: 9040274    DktEntry: 25    Page: 5 of 15

## II.

### A.

Rule 5 of the Nevada Rules of Appellate Procedure gives this court discretionary authority to accept and answer certified questions of Nevada law that "may be determinative of the cause then pending in the certifying court." *See Volvo Cars of N. Am., Inc. v. Ricci*, 122 Nev. 746, 749-51, 137 P.3d 1161, 1163-64 (2006). As the answering court, our role "is limited to answering the questions of law posed to [us;] the certifying court retains the duty to determine the facts and to apply the law provided by the answering court to those facts." *In re Fontainebleau Las Vegas Holdings, L.L.C.*, 127 Nev. ___, ___, 267 P.3d 786, 794-95 (2011). We accept "the facts as stated in the certification order and its attachment[s]." *Id.* at ___, 267 P.3d at 795.

These rules, combined with the parties' stipulation, prompt us to narrow the question posed by the Ninth Circuit. *See Chapman v. Deutsche Bank Nat'l Trust Co.*, 129 Nev. ___, ___, 302 P.3d 1103, 1105-06 (2013) (this court may, in its discretion, rephrase a certified question). Rephrased, the question we consider is: Does Nevada public policy preclude giving effect to a household exclusion clause in an automobile liability insurance policy delivered in Mississippi to Mississippi residents and choosing Mississippi law as controlling, where Mississippi law permits household exclusions but the effect of the exclusion is to deny Nevada residents who were injured in Nevada recovery of the minimum coverages specified in NRS 485.3091?

### B.

Nevada tends to follow the Restatement (Second) of Conflict of Laws (1971) in determining choice-of-law questions involving contracts, generally, *see Ferdie Sievers & Lake Tahoe Land Co. v. Diversified*

Case: 09-16487     04/01/2014      ID: 9040274     DktEntry: 25     Page: 6 of 15

*Mortgage Investors,* 95 Nev. 811, 815, 603 P.2d 270, 273 (1979) (citing and applying Restatement (Second) of Conflict of Laws § 187 to a contractual choice-of-law clause), and insurance contracts, in particular. *See Sotirakis v. USAA,* 106 Nev. 123, 125-26, 787 P.2d 788, 790-91 (1990) (citing and applying Restatement (Second) of Conflict of Laws §§ 188 and 193 to an insurance choice-of-law question where the policy did not include a choice-of-law clause); *see also Williams v. USAA,* 109 Nev. 333, 335, 849 P.2d 265, 266-67 (1993) (to like effect); *Daniels v. Nat'l Home Life Assurance Co.,* 103 Nev. 674, 677-78, 747 P.2d 897, 899-900 (1987) (effectively adopting, although not citing, Restatement (Second) of Conflict of Laws § 192 & *id.* cmt. e, denying effect "to a choice of law provision in a life insurance contract designating a state whose local law gives the insured less protection than he would receive under the otherwise applicable law," that being the insured's domicile when he or she applied for the policy). So long as "the parties acted in good faith and not to evade the law of the real situs of the contract," Nevada's choice-of-law principles permit parties "within broad limits to choose the law that will determine the validity and effect of their contract." *Ferdie Sievers,* 95 Nev. at 815, 603 P.2d at 273. "The situs fixed by the agreement, however, must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum," *id.,* or other interested state.

As the Ninth Circuit declared, the parties to this appeal chose Mississippi law in good faith and not in an attempt to evade the law of the real situs of the contract. This makes *Daniels,* 103 Nev. at 677-78, 747

SUPREME COURT
OF
NEVADA

(O) 1947A

Case: 09-16487      04/01/2014      ID: 9040274      DktEntry: 25      Page: 7 of 15

P.2d at 899-900, inapplicable.[2] The question, then, is whether the policy's choice of Mississippi law, which validates the household exclusion,[3] offends a fundamental Nevada policy in the circumstances of this case. This depends not just on Nevada public policy but also on Mississippi public policy and whether Nevada or Mississippi has a materially greater interest in the matter. "Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188 [choice-of-law in contract cases without choice-of-law clauses], would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest than the state of the chosen law in the determination of the particular issue." Restatement (Second) of Conflict of Laws § 187 cmt. g. "An important consideration is [where and to what extent] the significant contacts are grouped. For the forum will be more inclined to defer to the policy of a state which is closely related to the contract and the parties than to the policy of a state where few contacts are grouped." *Id.*

---

[2] In *Daniels*, the insurer sold "group life insurance" to military veterans pursuant to a master policy that recited it was "delivered" in Missouri, whose law the policy chose. 103 Nev. at 677-78, 747 P.2d at 899-900. We determined the policy was not true group insurance but "'franchise insurance,' which is to be treated as an individual policy." *Id.* at 678, 747 P.2d at 899. Since the policy was applied for and delivered to a Nevada domiciliary in Nevada, Nevada law applied notwithstanding the master policy's recitation that it was issued and delivered in Missouri. *Id.* at 678, 747 P.2d at 900.

[3] We accept the parties' stipulated representation that Mississippi law validates household exclusions even as to minimum statutory coverages. See *Thompson v. Miss. Farm Bureau Mut. Ins. Co.*, 602 So. 2d 855, 856 (Miss. 1992).

Case: 09-16487      04/01/2014      ID: 9040274      DktEntry: 25      Page: 8 of 15

In *Sotirakis*, we weighed analogous contacts and concerns. Sotirakis, a California resident covered by a California insurance policy, was injured in an accident in Nevada. 106 Nev. at 124, 787 P.2d at 789. As here, the insurer denied coverage based on a household exclusion clause. Had the policy been delivered in Nevada, to a Nevada resident owning a car principally garaged in Nevada, then-existing case law would have invalidated the household exclusion to the extent it "eliminate[d] the statutorily mandated [$15,000/$30,000] minimum liability coverage" specified in NRS 485.3091. *Farmers Ins. Exch. v. Warney*, 103 Nev. 216, 217, 737 P.2d 501, 501 (1987); *see Estate of Neal v. Farmers Ins. Exch.*, 93 Nev. 348, 351, 566 P.2d 81, 83 (1977) (invalidating a household exclusion clause under the since-repealed NRS 698.320, requiring bodily injury insurance in specified minimum amounts). Based on this case law, Sotirakis asked us to invalidate her policy's household exclusion, even though, "[u]nder California statutes and case law, [household] exclusion clauses are permissible." *Sotirakis*, 106 Nev. at 124, 787 P.2d at 789.

We rejected Sotirakis's invitation to look to Nevada law, applied California law, and upheld the household exclusion. In doing so, we emphasized that "the policy was issued in California to a California resident who paid premiums in California. Moreover, the driver was also a resident of California." *Id.* at 126, 787 P.2d at 790. As "the principal location of the risk" was California and "the cost of the policy . . . was determined in California[,] . . . the insureds presumably assumed that their premium was based on California, rather than another state's, rates." *Id.* at 126, 787 P.2d at 791. *See* Restatement (Second) of Conflict of Laws § 193 ("The validity of a contract of . . . casualty insurance and the rights created thereby are determined by the local law of the state which

the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship . . . to the transaction and the parties . . . ."). The "only contact" Nevada had with Sotirakis "was the mere fact that it was the state in which [she] happened to have an accident. If this were enough to apply a state's law, then laws would be applied according to the fortuity of where the accident occurred rather than by the provisions of the insured's policy." *Sotirakis*, 106 Nev. at 126, 787 P.2d at 791 (citing *Boardman v. USAA*, 470 So. 2d 1024, 1032 (Miss. 1985)).

*Sotirakis* represents the majority rule. 1 Irvin E. Schermer & William J. Schermer, *Automobile Liability Insurance* § 6.9 (4th ed. 2013) ("Where the insured vehicle covered by a policy containing a household exclusion is involved in an accident in a foreign state, a majority of the courts have applied the rule of the state in which the policy was issued to enforce the exclusion, provided the exclusion was valid in the issuing state."). But the Faehnriches argue *Sotirakis* should not apply because upholding the household exclusion in this case will leave the children with "no recovery from any other source." As support, they cite NRS 485.3091 and *Williams*, 109 Nev. at 336, 849 P.2d at 267.

Decided three years after *Sotirakis*, *Williams* applied California law to deny an insured injured in a Nevada accident underinsured motorist (UIM) coverage mandated by application of Nevada but not California law. *Id.* The facts were similar to *Sotirakis* except that, in *Williams*, the insured was a member of the United States Air Force on four-week assignment to Nevada when the accident occurred, and he had already recovered $300,000 under the negligent parties' and his own

Case: 09-16487      04/01/2014        ID: 9040274      DktEntry: 25      Page: 10 of 15

policies. *Id.* at 333-34, 849 P.2d at 265-66. Even though Williams had been in Nevada longer than Sotirakis, we concluded that "Williams' most significant contact with Nevada is that he was in a car accident in this state," a contact we dismissed as a "'fortuity,'" quoting *Sotirakis*, 106 Nev. at 126, 787 P.2d at 791. *Williams*, 109 Nev. at 335, 849 P.2d at 267. And so, we rejected Williams' argument that "the application of California law violates the Nevada public policy that affords insureds an expansive recovery under UIM coverage" as improperly "equat[ing] a routine dissimilarity between two states' laws with a violation of a fundamental public policy." *Id.* at 336, 849 P.2d at 267. We continued, though, as follows: "*Indeed, in scenarios similar to Williams', we applied Nevada public policy only where other states' laws would preclude* **all** *recovery for the injured insured.*" *Id.* (emphasis added to that in original) (citing *Daniels*, 103 Nev. 674, 747 P.2d 897).

The Faehnriches argue that the converse to the language just quoted is true as well: If other states' laws preclude all recovery, they necessarily violate Nevada public policy. And because the family-member exclusion included in their Mississippi-based insurance policy would preclude the Faehnrich children from recovering anything, including the statutory minimums enumerated in NRS 485.3091, they reason that the policy is unenforceable for public policy reasons. But this reading of *Williams* cannot be squared with the holding in *Sotirakis*. The cases that invalidated household exclusion clauses in Nevada-based policies did so only as to the minimum coverages specified in NRS 485.185 and NRS 485.3091. *Warney*, 103 Nev. at 217, 737 P.2d at 501; *see Estate of Neal*, 93 Nev. at 351, 566 P.2d at 82 (decided under prior statute). While *Sotirakis* mentions in passing that the accident was caused by the combined

Case: 09-16487     04/01/2014     ID: 9040274     DktEntry: 25     Page: 11 of 15

negligence of Sotirakis's husband and the driver of the other car, 106 Nev. at 124, 787 P.2d at 789, the opinion says nothing about other insurance being available. If the availability of other insurance obviated the need to apply Nevada's household exclusion case law, surely the opinion would have said so. And as for *Daniels*, on which *Williams* relies, Nevada's statutory requirements for life insurance policy cancellations applied because the policy was "'delivered in this state' within the meaning of NRS 687B.010(2)." *Daniels*, 103 Nev. at 678, 747 P.2d at 900 (quoting NRS 687B.010(2)), *discussed supra* note 2. We thus reject as *obiter dictum* the suggestion in *Williams* that Nevada public policy requires coverage whenever applying foreign law would deny all recovery to an insured.

The more relevant distinction between *Sotirakis* and this case is the residence of Toni and the two children, which the Ninth Circuit's certification order declared to be Nevada, a finding binding on us. *Fontainebleau*, 127 Nev. at ___, 267 P.3d at 794. Although the parties make some general arguments about public policy and residency, they do not tie it to the statutes of either Mississippi or Nevada beyond a general citation to NRS 485.3091. But the Legislature expresses the relevant public policy in the motor vehicle and insurance statutes it passes. *See Nat'l Cnty. Mut. Fire Ins. Co. v. Johnson*, 879 S.W.2d 1, 5 (Tex. 1993) (Cornyn, J., concurring and dissenting); *cf. Daniels*, 103 Nev. at 678, 747 P.2d at 900 ("If the statute under consideration is clear on its face, we cannot go beyond it in determining legislative intent."). We therefore look to Nevada statutes to determine Nevada public policy.

NRS 485.3091(1) is codified under the heading "proof of financial responsibility." It states that an "owner's policy of liability insurance" must provide bodily injury coverage of at least $15,000 per

person and $30,000 per accident. This statute complements Nevada's compulsory insurance law, NRS 485.185, which provides that "[e]very owner of a motor vehicle which is registered or required to be registered in this State shall continuously provide, while the motor vehicle is present or registered in this State," insurance providing bodily injury coverage of at least $15,000/$30,000. NRS 482.385(3) specifies when a motor vehicle is "required to be registered in this State" and, so, becomes subject to Nevada's compulsory insurance law. As written at the time relevant to this dispute, NRS 482.385(3) provided:

> When a person, formerly a nonresident, becomes a resident of this State, he shall:
>
> (a) Within 30 days after becoming a resident; or
>
> (b) At the time he obtains his driver's license,
>
> whichever occurs earlier, apply for the registration of any vehicle which he owns and which is operated in this State.

Here, we know from the Ninth Circuit certification order that Toni and the boys were Nevada residents on June 8, when the accident occurred. But we do not know when Toni, who still carried a Mississippi driver's license, became a Nevada resident and so, whether the Jeep, still carrying Mississippi plates and registration, was "required to be registered in this State" under NRS 485.185 and NRS 482.385(3). The Ninth Circuit order does not say and the documents appended to it address the date Toni and the boys became Nevada residents only in pleadings. In this regard, the Faehnriches admit in part and deny in part Progressive's allegation that Toni "is and was, at all times relevant to these proceedings, a resident and/or domicile [sic] of Mississippi;" they also affirmatively

Case: 09-16487     04/01/2014       ID: 9040274     DktEntry: 25     Page: 13 of 15

allege that, "on June 7," the day before the accident, "Defendant Toni Faehnrich moved from Mississippi to Nevada with her two minor children."[4] We thus cannot conclusively say that Nevada statutory law applies to this policy. *See also Progressive Max Ins. Co. v. Toca*, No. 2:05-CV-0845-KJD-PAL, 2007 WL 2891980, at *3-4 (D. Nev. Sept. 28, 2007) (declining to apply Nevada substantive law to a Mississippi policy issued to a Mississippi resident who moved to Nevada shortly before the accident).

More fundamentally, it appears from our research that Nevada law respecting household exclusions changed in 1990, when NRS 687B.147 took effect. This statute specifically authorizes household exclusions in Nevada motor vehicle insurance policies, as follows:

> A policy of motor vehicle insurance covering a private passenger car may be delivered or issued for delivery in this state if it contains an exclusion, reduction or other limitation of coverage for the liability of any named insured for bodily injury to:
>
> 1. Another named insured; or
>
> 2. Any member of the household of a named insured,

---

[4] The Faehnriches submitted a "Respondents' Appendix" to this court when they filed their answering brief. They argue that the policy's "Out-of-State Coverage" clause overrides the policy's choice-of-law clause and makes Nevada law applicable. But the page of the policy where this clause appears, included in the appendix filed with this court, is not included in the excerpts of record and other materials forwarded to this court by the Ninth Circuit with its certification order. Also, no argument concerning this clause was made in the briefs filed in the Ninth Circuit. Under *Fontainebleau*, 127 Nev. at ___, 267 P.3d at 794-95, we cannot, and therefore do not, address the "Out-of-State Coverage" clause.

SUPREME COURT
OF
NEVADA

(O) 1947A

Case: 09-16487      04/01/2014      ID: 9040274      DktEntry: 25      Page: 14 of 15

> unless the named insured rejects the exclusion, reduction or other limitation of coverage after full disclosure of the limitation by the insurer on a form approved by the Commissioner. The form must be written in a manner which is easily understood, printed in at least 12-point type and contain the statement "I understand that this policy excludes, reduces and limits coverage for bodily injury to members of my family and other named insureds . . . ."

This statute is not cited by the parties to this case; nor was it addressed in *Sotirakis*, *Warney*, or *Neal*, whose operative facts predate its enactment. But it changes Nevada from a state that invalidates household exclusions to a state that, by statute, expressly permits them. *See generally* Schermer & Schermer, *supra*, § 6:8 n.14 (cataloguing the states that permit household exclusions by statute, including Nevada).

The Faehnriches' policy was neither issued for delivery nor delivered in Nevada, so NRS 687B.147 does not technically control. See NRS 687B.010(2) (NRS Chapter 687B excludes "[p]olicies or contracts not issued for delivery . . . nor delivered in this state"). But if by statute Nevada now permits household exclusions in "polic[ies] of motor vehicle insurance covering . . . private passenger car[s]," NRS 687B.147, assuming the required disclosures and rejections are made, Nevada should honor the parties' choice of Mississippi law with respect to policies issued for delivery and delivered in Mississippi like the Faehnriches' was. Mississippi is the state with the strongest ties to the transaction, and Nevada's public policy does not appear so strong as to justify application of its law to an insurance policy applied for, delivered and renewed in Mississippi by Mississippi residents.

For these reasons, we answer the certified question in the negative and conclude that giving effect to the choice-of-law provision in

SUPREME COURT
OF
NEVADA

(0) 1947A

the parties' automobile insurance policy does not violate Nevada's public policy.

_____, J.
Pickering

We concur:

_____, C.J.
Gibbons

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Hardesty

_____, J.
Douglas

_____, J.
Saitta